COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judges Benton, Elder, Frank, Humphreys, Clements,
                 Felton, Kelsey and Haley
Argued at Richmond, Virginia


GEORGE M. EPPS, SHERIFF OF
 CITY OF PETERSBURG, VIRGINIA

v.       Record No. 0591-04-2

COMMONWEALTH OF VIRGINIA                          OPINION BY
                                                 JUDGE ROBERT P. FRANK
GEORGE M. EPPS, SHERIFF OF                        MARCH 14, 2006
 CITY OF PETERSBURG, VIRGINIA

v.       Record No. 2303-04-2

COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Robert G. O'Hara, Judge Designate

John A. Gibney, Jr. (Thompson & McMullan, P.C., on briefs), for
appellant.

John H. McLees, Senior Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on briefs), for appellee.


In two separate appeals, George M. Epps, appellant, appeals the judgment of the trial court

finding him guilty of three counts of criminal contempt and one count of civil contempt. In this

consolidated appeal, appellant contends the trial court erred in: 1) finding Judge Baskervill had

authority to enter the April 16, 2002 and July 1, 2003 orders; 2) failing to advise appellant

whether the charges against him were civil or criminal; 3) finding Judge Baskervill competent to

testify as a sitting judge; 4) finding appellant violated Code § 18.2-456(4) for leaving the

courthouse unsecured; 5) finding that superseding legislation did not relieve appellant from the

duty of providing a deputy at the courthouse entrance; 6) refusing to admit evidence of "impossibility" to comply with the court orders; 7) finding appellant violated the April 16, 2002 order; 8) finding appellant violated the July 1, 2003 order[1]; and 9) finding Judge Baskervill had a right to enter appellant's office and demand return of the July 1, 2003 letter and order.

By published opinion dated July 26, 2005, a divided panel of this Court reversed the judgment of the trial court. Epps v. Commonwealth, 46 Va. App. 161, 616 S.E.2d 67 (2005). We stayed the mandate of that decision and granted a rehearing *en banc*, 46 Va. App. 486, 618 S.E.2d 360 (2005). Upon rehearing *en banc*, it is ordered that the stay of the mandate is lifted, and the judgment of the trial court is reversed.

BACKGROUND

This case concerns security of the "old courthouse" building in Petersburg. The courthouse houses a courtroom on the second floor. The first floor includes the office of the Circuit Court Administrator, Gladys Kennedy, Circuit Judge D'Alton's office and the City's public law library. The court receives mail and presentence reports at the administrator's office. Lawyers also schedule all hearings at Ms. Kennedy's office. At the entrance to the old courthouse is a desk occupied by the deputy sheriff assigned to provide security for the courthouse building.

In April 2002, Circuit Court Judges D'Alton and Baskervill met with appellant, the Sheriff of the City of Petersburg, to discuss mutual problems. The judges memorialized the agreement reached at that meeting in a letter addressed to the sheriff, which the court entered as a court order on April 16, 2002, detailing certain duties appellant would perform in service to the court. Pertinent to the present case was a provision that "[t]he main court building, which has a public law library

---

[1] Appellant argues he did not violate the July 1, 2003 order by removing the sign and order from the courthouse door. We note that the trial court did not convict appellant of violating that order, rather the court found appellant guilty of criminal contempt "for the July 2, 2003 removal of Court Order from the Courthouse door and subsequent refusal to return said order."

and conducts the court's business, shall have a deputy at the front entrance at all times during business hours of 8:00 a.m. and 4:30 p.m. Monday through Friday." Appellant complied with that order for over a year.

On June 6, 2003, appellant wrote a letter to the circuit court and district court clerks in Petersburg discussing difficulties resulting from a reduction of funds from the Compensation Board. The letter stated, among other things, that "[w]ithout these funds from the fee bills I can no longer have deputies remain with the court building once court has concluded." The appellant did not send the circuit court judges a copy of this letter.

On June 9, 2003, appellant wrote a letter to Chief Judge D'Alton discussing his office's funding and staffing problems. In that letter, he did not tell the court, as he had the clerks, that he would no longer be able to maintain a deputy at the courthouse door in compliance with the April 16, 2002 order. Instead, he wrote that "[a]s of July 1, 2003, the reduction in the Sheriff's Office budget for FY04 will require some personnel changes which are directly related to maintaining the present state of readiness for our courts, the jails, document services and our transportation unit."

Effective July 1, 2003, appellant removed the deputy who guarded the old courthouse entrance when court was not in session. At trial, appellant explained he decided to remove the deputy from the front desk and return the deputy to the jail "to help to man the jails and fulfill the responsibilities of the things that were getting behind in the jail system." Appellant was aware of the April 16, 2002 order that required the presence of a deputy at the front desk. Essentially, appellant testified he could not comply with the April 16, 2002 order and still properly discharge his responsibilities in the jail. Appellant continued to properly staff the security needs of the court when it was in session.

On July 1, 2003, Judge Baskervill was informed that no deputy was posted at the old courthouse entrance, which left Ms. Kennedy alone in that building. Judge Baskervill directed the

preparation and posting of a sign that indicated the courthouse was temporarily closed due to lack of security. The sign further gave a phone number to call in order to gain entrance.

Appellant removed that sign from the courthouse door on July 1, 2003, saying he did so because he determined the sign, itself, was a security risk.

Later that day, Judge Baskervill directed the preparation and posting of another virtually identical sign on the courthouse door. Also on July 1, 2003, she entered an order to be posted with the sign that provided:

> It appearing to the Court that the Sheriff of the City of Petersburg
> has ceased to provide security for the Courthouse when Court is
> not in session, it is ORDERED that in such times when security is
> not provided, the Courthouse shall be locked. Entrance shall be
> had only by calling 733-2423. The Clerk of this Court is directed
> to post a copy of this Order on the front door of each Courthouse.

Appellant then removed from the courthouse door both the second sign and the court order that accompanied it.

The next morning, July 2, 2003, Judge Baskervill went to the sheriff's office to retrieve the second sign and order. Appellant responded that the judge had no right to post papers on the courthouse door because he was in charge of courthouse security. The judge again asked for the return of those items. Appellant went to his office and pulled out the sign and order, still taped together. Judge Baskervill again asked for those items, and appellant responded, "no, I want to read them." After doing so, appellant told the judge that the order was inaccurate, and she had no right to post it. He eventually returned the sign, but not the order. When she again asked for the return of the order, he refused, and the judge left his office. One of appellant's deputies returned the order to the court the following day.

Judge D'Alton then issued a rule to show cause requiring appellant to show cause why he should not be held in contempt of court, pursuant to Code § 18.2-456 upon violation of the

- 4 -

orders of April 16, 2002 and July 1, 2003. The rule was issued upon the sworn statement of Judge Baskervill, which was attached to the rule.

Prior to the beginning of the contempt trial, appellant inquired whether the proceeding was criminal or civil in nature. The court responded the proceeding was both civil and criminal. At trial, the Commonwealth offered the testimony of Judge Baskervill, which the trial court admitted over appellant's objection.

At trial, appellant asked that he be allowed to put on evidence outlining staffing problems and his efforts to obtain additional funding from the City and the Compensation Board to obtain additional staffing to comply with the order. The trial court denied appellant's request, ruling that appellant's inability to comply with the court order is not a defense to contempt. The trial court did allow a proffer. Appellant testified in his own behalf.

The trial court found appellant guilty of one count of civil contempt for violating the April 16, 2002 order by not having security at the doors of the courthouse on July 1 and July 2, 2003. Further, the trial court found appellant guilty of three counts of criminal contempt violating various subsections of Code § 18.2-456. The first act was the removal of the sign and order on July 2, 2003 constituting misbehavior under Code § 18.2-456(1). The court, on this charge, found appellant, by removing the sign and order, denied the public access to the courthouse, thus defeating the purpose of the sign and order. The trial court thus concluded appellant "interrupt[ed] the administration of justice."

The trial court also found appellant guilty of criminal contempt on July 1, 2003 for, without justification, leaving the courthouse without security and without notice to the court. The trial court found this act to be "an act of misbehavior of an official nature or character of an officer of the court" in violation of Code § 18.2-456(4).

Finally, the trial court found appellant guilty of criminal contempt for the July 2, 2003 removal of the court order from the courthouse door and subsequent refusal to return the order to the court upon reasonable request in violation of Code § 18.2-456(5).

## ANALYSIS

## I. VALIDITY OF ORDERS

Appellant contends Judge Baskervill had no authority to enter the April 16, 2002 order requiring posting of a deputy at the front desk and the July 1, 2003 order directing that the courthouse be closed when security was not provided. He maintains that since the April 16, 2002 order exceeds the authority of Code § 17.1-513, the trial court had no subject matter jurisdiction and the order is void. Therefore, contends appellant, he had no duty to obey the order. We disagree.

"It is, of course, well settled that disobedience of, or resistance to a void order, judgment, or decree is not contempt." Robertson v. Commonwealth, 181 Va. 520, 536, 25 S.E.2d 352, 358 (1943). This is so because "a void order, judgment, or decree is a nullity and may be attacked collaterally." Id.

Appellant cites Code § 17.1-513[2] as the sole source of jurisdiction for circuit courts. He contends circuit courts have no authority other than to preside over and rule on "proceedings."

---

[2] Code § 17.1-513 states:

> The circuit courts shall have jurisdiction of proceedings by quo warranto or information in the nature of quo warranto and to issue writs of mandamus, prohibition and certiorari to all inferior tribunals created or existing under the laws of this Commonwealth, and to issue writs of mandamus in all matters of proceedings arising from or pertaining to the action of the boards of supervisors or other governing bodies of the several counties for which such courts are respectively held or in other cases in which it may be necessary to prevent the failure of justice and in which mandamus may issue according to the principles of common law. They shall have appellate jurisdiction in all cases, civil and criminal, in which

Yet, appellant ignores other statutory and common law powers of the court to ensure the orderly administration of justice. See Bd. of Supervisors v. Bacon, 215 Va. 722, 724, 214 S.E.2d 137, 138 (1975) (holding when the courthouse building is occupied by court and municipal offices, the court has authority to control that portion of the building used for the court); see also Hutchins v. Carrillo, 27 Va. App. 595, 500 S.E.2d 277 (1998) (stating that district court judges have the authority to close court on the occurrence of inclement weather).

Courts have the inherent authority to ensure the security of their courtrooms. See Payne v. Commonwealth, 233 Va. 460, 466, 357 S.E.2d 500, 504 (1987) ("The trial judge has overall supervision of courtroom security."); see also Bond v. Commonwealth, 32 Va. App. 610, 615, 529 S.E.2d 827, 829 (2000) (upholding the trial judge's decision to exercise responsibility for courtroom security by disallowing accused's twin brother, a prisoner, to sit among the audience

---

an appeal may, as provided by law, be taken from the judgment or proceedings of any inferior tribunal.

They shall have original and general jurisdiction of all cases in chancery and civil cases at law, except cases at law to recover personal property or money not of greater value than $100, exclusive of interest, and except such cases as are assigned to some other tribunal; also in all cases for the recovery of fees in excess of $100; penalties or cases involving the right to levy and collect toll or taxes or the validity of an ordinance or bylaw of any corporation; and also, of all cases, civil or criminal, in which an appeal may be had to the Supreme Court. They shall also have original jurisdiction of all indictments for felonies and of presentments, informations and indictments for misdemeanors.

They shall have appellate jurisdiction of all cases, civil and criminal, in which an appeal, writ of error or supersedeas may, as provided by law, be taken to or allowed by such courts, or the judges thereof, from or to the judgment or proceedings of any inferior tribunal. They shall also have jurisdiction of all other matters, civil and criminal, made cognizable therein by law and when a motion to recover money is allowed in such tribunals, they may hear and determine the same, although it is to recover less than $100.

in the courtroom). Code § 53.1-120(A) mandates that the "sheriff shall ensure that the courthouses and courtrooms . . . are secured from violence and disruption." However, the chief judge of the circuit "shall be responsible by agreement with the sheriff . . . for the designation of courtroom security deputies." Code § 53.1-120(B).

The April 16, 2002 order confirmed the agreement between the judges and the sheriff, and it ordered compliance with the agreement. Appellant never argued the order did not accurately reflect the agreement. In fact, appellant complied with the order until July 1, 2003.

In its role to provide for the orderly administration of justice, the court ordered the courthouse closed when no security was provided. Indeed, it would be folly to claim the circuit court judge has the power to ensure courtroom, but not courthouse, security. If the judge is impotent to supervise who enters the courthouse, the ability to ensure the security of the courtroom is diminished. Although Code § 53.1-120 mandates the sheriff to provide courthouse security, the statute does not bar the court from ensuring the sheriff properly discharges that duty.

Clearly, the trial court has subject matter jurisdiction to address courtroom and courthouse security issues. Whether the trial court could order security when the court is not in session is not jurisdictional. The error, if any, would be as to whether the trial court had the authority to exercise its subject matter jurisdiction. See Nelson v. Warden, 262 Va. 276, 552 S.E.2d 73 (2001). If the court lacks authority to exercise its subject matter jurisdiction, the order would be erroneous or voidable, not void, see Robertson, 181 Va. at 536, 25 S.E.2d at 358, and appellant's remedy would be a direct appeal, not disobedience.

> Of course a party cannot be guilty of contempt of court for disobeying an order which the court had no authority of law to make, but if a court has jurisdiction of the parties and legal authority to render the order, then it must be obeyed even though it was erroneous or improvidently entered.

Id. at 537, 25 S.E.2d at 359 (citations omitted); see also Potts v. Commonwealth, 184 Va. 855, 861, 36 S.E.2d 529, 531 (1946) ("A dissatisfied litigant should challenge the correctness of an adverse judgment or ruling by an appeal and not by disobedience of such order or by interfering with or obstructing the judicial processes."). When one subject to a court order disobeys that order contending the order is void, he does so at his peril, as appellant did here.

Thus, the trial court had subject matter jurisdiction to order appellant to provide courthouse security. The order was, at most, voidable rather than void, and appellant did not have the privilege to disobey the order, even if it was erroneous.

## II. JUDGE BASKERVILL'S TESTIMONY

Appellant contends the trial court erred in allowing Judge Baskervill to testify at the contempt hearing, in violation of Code § 19.2-271.

Code § 19.2-271 states in part: "No judge shall be competent to testify in any criminal or civil proceeding as to any matter which came before him in the course of his official duties." The only exception to the prohibition of Code § 19.2-271 is:

> Notwithstanding any other provision of this section, any judge, clerk of any court, magistrate, or other person having the power to issue warrants, who is the victim of a crime, shall not be incompetent solely because of his office to testify in any criminal or civil proceeding arising out of the crime.

This appeal involves an analysis of the scope of both the term "official duties" as used in the disqualification provision and the term "victim of a crime" as used in the exceptions clause.

Although the Commonwealth concedes that the incidents to which the judge testified came before her in the course of her "official duties," we are not bound by concessions of law by the parties. See Tuggle v. Commonwealth, 230 Va. 99, 111 n.5, 334 S.E.2d 838, 846 n.5 (1985) (affirming death sentence despite Attorney General's suggestion that the trial court's error required the case be remanded for resentencing).

Where a party has challenged the applicability of a particular statute on appeal, appellate courts always have the authority to raise and construe the plain meaning of that statute. Indeed, as noted by the Virginia Supreme Court, an appellate court "cannot be forced to accept a flawed construction of a statute . . . simply because of an oversight or tactical decision by one or both of the parties." Elliott v. Commonwealth, 267 Va. 464, 472, 593 S.E.2d 263, 268 (2004).

Here, the trial court concluded that the plain language of the statute did not apply when it admitted the judge's testimony, reasoning that the incidents about which the judge proposed to testify occurred "outside of a judicial proceeding." Thus, we address, *sua sponte*, whether the subject of the contempt was a "matter which came before [the judge] in the course of [the judge's] official duties." See Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 635, 593 S.E.2d 568, 571 (2004) (noting that "a pure question of statutory interpretation" is "a matter within the core competency of the judiciary"); see also One 1968 Buick v. State, 638 N.E.2d 1313, 1316 (Ind. Ct. App. 1994) ("A preliminary issue which we raise *sua sponte* is one of statutory interpretation."); Bartus v. Dep't of Health & Social Servs., 501 N.W.2d 419, 423 (Wis. 1993) (holding that the Wisconsin Court of Appeals "had the authority to raise the question of statutory interpretation *sua sponte*," and declining "to adopt a *per se* rule requiring courts to seek additional briefing" because the court "consider[ed] such a rule both unnecessary and unduly burdensome to the courts").

The Canons of Judicial Conduct for the Commonwealth of Virginia define a judge's judicial duties to "include all the duties of the judge's office prescribed by law." Va. Sup. Ct. Jud. Cond. Canon 3 (2006). As previously noted, the law is well settled that courts have the inherent authority to ensure the security of their courtrooms and to ensure the orderly administration of justice. This authority necessarily extends to ensuring the security of the courthouse.

Additionally, trial judges have the authority to ensure their orders are followed. "'It is essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees . . . .'" Carter v. Commonwealth, 2 Va. App. 392, 395, 345 S.E.2d 5, 7 (1986) (quoting In re Chadwick, 109 Mich. 588, 596, 67 N.W. 1071, 1072 (1896)). "'The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of the power to protect themselves and the dignity and authority of the court.'" Holt v. Commonwealth, 205 Va. 332, 337, 136 S.E.2d 809, 813 (1964) (quoting Ex parte Robinson, 86 U.S. 505 (1874)), rev'd on other grounds, 381 U.S. 131 (1965). Thus, any actions taken by a trial judge to ensure courthouse security, and to enforce any orders issued to that end, fall under the "official duties" of that judge.

Code § 19.2-271 applies to any "matter" that "[comes] before" a judge acting in his or her "official" capacity. "Matter" is defined as "[a] subject of concern, feeling, or action." The American Heritage Dictionary of the English Language 111 (3d ed. 1992). The statute applies regardless of whether that matter occurs in the courtroom, chambers, the sheriff's office, or any other location and regardless of whether the matter results in subsequent judicial proceedings over which that judge presides or entry of an order by that judge. It is the "official duty" of the judge, not the location of the "matter," that controls.

Judge Baskervill's encounters with appellant, in which he violated those orders, occurred for the purpose of enforcing her orders. She was not a disinterested witness who merely happened to observe Sheriff Epps's contemptuous behavior. Rather, she sought him out precisely because of her *official* involvement in the entry of the orders and her belief that Sheriff Epps had violated them. It was in the course of these "official duties" that Judge Baskervill observed the behavior about which she testified.

Thus, we conclude all of the relevant matter about which Judge Baskervill testified did, in fact, "[come] before [Judge Baskervill] in the course of [her] official duties" as contemplated by Code § 19.2-271.

We next address the Commonwealth's contention that Judge Baskervill was competent to testify because she was the victim of the contempt. Appellant responds that because contempt in this case is an offense against the dignity of the court, the court, not the judge, is the victim. We agree with appellant.

Section 4781 of the Code of Virginia of 1924, predecessor to Code § 19.2-271, made judicial officers incompetent to testify against a criminal defendant in a court of record with respect to any statements that the defendant made at his trial or preliminary examination before any such officer. That statute provided in relevant part:

> "No justice of the peace, police justice, civil and police justice, juvenile and domestic relations court judge or other trial justice shall be competent to testify against the accused in a court of record as to statements made by the accused on his trial by such justice or on his preliminary examination before such justice."

Baylor v. Commonwealth, 190 Va. 116, 121, 56 S.E.2d 77, 79 (1949).

In Baylor, the Supreme Court of Virginia stated that Code § 4781, as amended by the General Assembly in 1924, mandated that a trial justice be barred from testifying in circuit court to the fact that the accused had entered a guilty plea when his case was heard below. That particular statute was "designed and intended to protect an accused against the testimony of certain judicial officers before whom he has appeared as to admissions or confessions made by him." Id.

A comparison of former Code § 4781 with Code § 19.2-271 makes clear that the provisions of Code § 19.2-271 are much broader than those of former Code § 4781. Section 4781 was applicable only to criminal prosecutions and then only in cases pending in a circuit

- 12 -

court. On the other hand, Code § 19.2-271 applies to both civil and criminal proceedings in all courts and makes judicial officers incompetent to testify about matters that come before them in their official capacity. It is applicable to all cases except those that are specifically enumerated, and any party or witness may invoke its provisions. The evolution of this present statute indicates the legislature's intent to make the prohibition all-inclusive, encompassing all situations where a judge may be called to testify "as to any matter which came before him in the course of his official duties" except when the judge is a victim of a crime.

The General Assembly has recognized the problem with Code § 19.2-271 with respect to calling judicial officers as witnesses. In cases where a finding of criminal contempt in district court is appealed to circuit court, the district court judge is often an indispensable witness to the contemptuous event below and his or her testimony is essential to prosecution of the offense on an appeal. Baugh v. Commonwealth, 14 Va. App. 368, 372-73, 417 S.E.2d 891, 894 (1992). Code § 18.2-459[3] resolves this dilemma by requiring that the district court judge submit a "certificate of the conviction and the particular circumstances of the offense." The circuit court "may hear the case upon the certificate and any legal testimony adduced on either side." Code § 18.2-459. This statutory scheme accords proper deference to the district court judge and

---

[3] Code § 18.2-459 provides

> Any person sentenced to pay a fine, or to confinement, under § 18.2-458 [district judge's contempt authority], may appeal therefrom to the circuit court of the county or city in which the sentence was pronounced, upon entering into recognizance before the sentencing judge, with surety and in penalty deemed sufficient, to appear before such circuit court to answer for the offense. If such appeal be taken, a certificate of the conviction and the particular circumstances of the offense, together with the recognizance, shall forthwith be transmitted by the sentencing judge to the clerk of such circuit court, who shall immediately deliver the same to the judge thereof. Such judge may hear the case upon the certificate and any legal testimony adduced on either side, and make such order therein as may seem to him proper.

ensures the preservation and availability of relevant evidence, in particular, the district judge's testimony. In effect, Code § 18.2-459 provides a narrow exception to Code § 19.2-271 by allowing a district court judge, by way of certificate, to testify as a witness in circuit court.

However, the General Assembly has not carved out a broader exception to Code § 19.2-271 that would permit a judicial officer who simply witnesses contemptuous behavior to testify in circuit court, nor did the legislature include circuit court judges in Code § 18.2-459. Had the legislature intended to create another exception to Code § 19.2-271 by allowing circuit court judges to testify through such a certificate, it would have so indicated.

"We must . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990). In sum, "'[c]ourts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied. There can be no departure from the words used where the intention is clear.'" Id. (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)).

"'Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute.'" Carter v. Commonwealth, 2 Va. App. 392, 396, 345 S.E.2d 5, 7 (1986) (quoting 4A Michie's Jurisprudence Contempt § 2 (repl. vol. 1983)). Any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt. Potts, 184 Va. at 859, 36 S.E.2d at 530.

Black's Law Dictionary defines "victim" as a "person harmed by a crime, tort, or other wrong." Black's Law Dictionary 1598 (8th ed. 2004). Here, Judge Baskervill witnessed Sheriff Epps's behavior, yet she was not victimized by it. She was not harmed, physically or otherwise,

and she suffered no personal consequences. Any damages resulting from Sheriff Epps's conduct were suffered by the court, not by Judge Baskervill individually. Contempt offends the dignity of the court, not the dignity of the judge. Although it was her individual acts in her judicial capacity that prompted appellant's actions, we disagree with the Commonwealth that Judge Baskervill was the victim of the offending behavior.

Because the matter at issue came before Judge Baskervill in the course of her official duties and because she was not a victim of a crime committed by Sheriff Epps, we conclude that the trial court erred in allowing Judge Baskervill to testify.[4]

Although the court erred in admitting Judge Baskervill's testimony, that error does not require reversal if we determine the error was harmless.[5] Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*); see Ferguson v. Commonwealth, 240 Va. ix, 396 S.E.2d 675 (1990) (citing Code § 8.01-678 for the proposition that "harmless-error review is required in all cases"). The Commonwealth has offered no argument that the error was harmless, and we perceive no basis for such a holding. See Land v. Commonwealth, 211 Va. 223, 226, 176 S.E.2d 586, 589 (1970) (in rape case in which court erroneously allowed Commonwealth to offer, in its case-in-chief, evidence of defendant's prior conviction for statutory rape, holding error could not be found harmless simply because defendant subsequently chose to take the stand because defendant's "decision to testify . . . may have been induced by the error" in admitting the testimony). While appellant's testimony was in

---

[4] This analysis is limited to the facts of this case. We need not decide whether a judge can be the victim of contempt if the contemptible behavior is directed at and personal to the individual judge.

[5] Appellant's testimony paralleled Judge Baskervill's. We will not address whether appellant waived his objection to the judge's testimony because the waiver issue was never argued and we will not address it *sua sponte*. Johnson v. Commonwealth, 45 Va. App. 113, 116, 609 S.E.2d 58, 59 (2005).

accord with Judge Baskervill's, we cannot say that it is harmless error for the court to have allowed Judge Baskervill's testimony in light of our inability to determine why appellant chose to testify.

### III. CRIMINAL AND CIVIL CONTEMPT

Appellant contends the trial court erred by failing to advise him which charges were criminal and which charges were civil. Appellant further maintains that his trial tactics may differ depending on whether the contempt charges are criminal or civil, i.e., deciding whether to testify or whether to call witnesses to address the quantum of punishment.[6] It is uncontroverted the trial court indicated at the beginning of the hearing that the charges were both civil and criminal. Further, by the end of the hearing, the trial court had articulated which charges were criminal and which were civil, so that appellant has this information at his disposal in the event of a retrial. Appellant argues, and we agree, that civil and criminal contempt are quite different offenses. However, those differences do not prevent the civil and criminal contempt charges from being tried simultaneously.[7]

"Contempt proceedings prosecuted to preserve the power and vindicate the dignity of the court are criminal and punitive; those prosecuted to preserve and enforce the rights of private parties are civil, remedial, and coercive." United Steelworkers v. Newport News Shipbuilding & Dry Dock Co., 220 Va. 547, 549, 260 S.E.2d 222, 224 (1979). There are significant differences in the two kinds of proceedings:

---

[6]Appellant also argues that if the proceeding was criminal, the assistant attorney general present at the hearing could not participate in the proceeding as co-counsel, pursuant to Code § 2.2-511. However, although an assistant attorney general was present, the record clearly indicates the assistant attorney general did not participate in the contempt proceedings. Thus, this argument has no factual predicate.

[7] Appellant did not object at trial to the joinder of the civil and criminal contempt charges.

In a criminal contempt proceeding, the defendant is presumed to be innocent, he must be proved guilty beyond a reasonable doubt, and he cannot be compelled to testify against himself. Moreover, a civil contempt proceeding is between the original parties to litigation and is instituted and tried as a part of the main cause; a criminal contempt proceeding is between the public and the defendant, and is not a part of the original cause.

Id. at 550, 260 S.E.2d at 225 (citation omitted).

"It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between . . . [civil and criminal contempt]." The punishment is criminal in nature if it is determined and unconditional. The punishment is civil if it is conditional, and a defendant can avoid a penalty by compliance with a court's order.

"A proceeding for criminal contempt is a quasi-criminal proceeding between the public and the violator." In a criminal contempt proceeding, the trial court may always punish the violator for the purpose of upholding the authority and dignity of the court. In a contempt proceeding of this nature, the punishment imposed is a fine and/or imprisonment.

"A proceeding for civil contempt partakes more of the nature of a remedial civil proceeding than it does of the nature of a criminal proceeding. Its main purpose is to procure the imposition of a punishment which will afford remedial relief to the parties injured."

Kessler v. Commonwealth, 18 Va. App. 14, 16, 441 S.E.2d 223, 224 (1994) (citations omitted).

In criminal contempt, the accused is entitled to counsel and may elect to have a jury trial if the punishment exceeds six months. See Baugh, 14 Va. App. at 374, 417 S.E.2d at 895 ("We recognize, however, that the unbridled authority of courts to punish for criminal contempt in the absence of a jury is limited to 'petty contempts,' with a penalty not exceeding six months."). A court may not convert a civil contempt hearing into a criminal trial without notice to the accused. See Powell v. Ward, 15 Va. App. 553, 560, 425 S.E.2d 539, 544 (1993). However, an accused may be tried simultaneously for criminal and civil contempt under certain circumstances. Steinberg v. Steinberg, 21 Va. App. 42, 47, 461 S.E.2d 421, 423 (1995). "[A]lthough the criminal and civil contempt matters [are] tried together, prejudice [is] avoided so long as 'the

defendants [are] . . . accorded all the rights and privileges owing to defendants in criminal contempt cases.'" Id. (quoting United States v. United Mine Workers, 330 U.S. 258, 298 (1947)).

Here, the record gives no indication that appellant was not afforded all the rights and privileges due him in a criminal proceeding, including application of the proper burden of proof. The contempt cases clearly were conducted as proceedings styled "Commonwealth of Virginia v. George M. Epps." An assistant Commonwealth's attorney represented the Commonwealth. Appellant retained his own counsel. Appellant was not entitled to a jury because the Commonwealth proceeded under Code § 18.2-457, which allows punishment of no more than ten days in jail. Finally, appellant's Fifth Amendment rights were not violated because he was not forced to incriminate himself and voluntarily testified on his own behalf.

The record makes clear which contempt charges are criminal and which are civil, and on retrial, the charges may be joined "so long as '[appellant is] . . . accorded all the rights and privileges owing to defendants in criminal contempt cases.'" Steinberg, 21 Va. App. at 47, 461 S.E.2d at 423 (quoting United Mine Workers, 330 U.S. at 298).

## IV. REMOVAL OF DEPUTY

Appellant argues he did not have adequate notice that failing to have a deputy at the door violated some duty to provide security. He claims the show cause rule does not indicate this violation to be an issue. We disagree. The show cause clearly alleged appellant violated the order of April 16, 2002. The affidavit attached to the rule set forth in detail that the deputy assigned to the front desk of the courthouse had been removed. The affidavit also stated the judges received no notice of the removal despite the fact that appellant notified the district court clerks.

- 18 -

While appellant claims prejudice from no notice, a substantial amount of his defense was an explanation of why he removed the deputy after the court concluded business. Further, appellant does not specify any prejudice that he may have suffered. See Butler v. Commonwealth, 264 Va. 614, 570 S.E.2d 813 (2002).

Thus we find appellant had proper notice.

## V. SUPERSEDING LEGISLATION

Appellant contends that subsequent to the April 16, 2002 order, the legislature enacted the 2003 Appropriations Act, which relieved his duty to comply with the order. The Appropriations Act of 2003 provides that unless a judge states in writing "that a substantial security risk exists," the number of courtroom security deputies is strictly limited. 2003 Va. Acts ch. 1042, item 64, at 1787. Appellant concludes that since the Act specifies the number of deputies assigned to court*rooms* and makes no such designation for court*house* security, the legislature did not intend to require security for the court*house* when court is not in session. Appellant argues the Act effectively overruled the court order. We disagree for two reasons.

First, although the 2003 Appropriations Act was not passed until after entry of the April 16, 2002 order, see 2003 Va. Acts ch. 1042, at 1733 (Act of May 1, 2003, amending Act of May 17, 2002, which provided biennial budget for 2002-2004), the courtroom security provision in the 2003 Act that appellant contends modified his duties under the 2002 order was also a part of the 2000 and 2002 Appropriations Acts, see 2002 Va. Acts ch. 899, item 64, at 2265 (Act of May 17, 2002, for fiscal years from July 1, 2002, to June 30, 2004); 2000 Va. Acts ch. 1073, item 61, at 3260-61 (Act of May 19, 2000, for fiscal years from July 1, 2000, to June 30, 2002), a fact brought out by the Commonwealth at trial. Thus, identical language was contained in the Appropriations Act in effect when the April 16, 2002 order was entered, and the inclusion of that language in the 2003 Act effected no change. Appellant admitted at trial that he was aware "the

- 19 -

language in that was in place already" and that he "just decided to act on it [in 2003]" because of further reductions in his department's budget.

Second, even if the courtroom security language in the 2003 Act had been new, its inclusion would not support the result appellant seeks. Appellant premises his argument on the maxim "*expressio unius est exclusio alterius*," which provides "when a statute mentions specific items, an implication arises that items not present were not intended to be included within the scope of the statute." Wise County Bd. of Supervisors v. Wilson, 250 Va. 482, 485, 463 S.E.2d 650, 652 (1995). Clearly, the legislature, by express terms, intended to limit staffing requirements to courtroom security, not overall security of the courthouse. When interpreting statutory language that

> "is plain and unambiguous, we are bound by the plain meaning of that statutory language. Thus, when the General Assembly has used words that have a plain meaning, courts cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed."

Beck v. Shelton, 267 Va. 482, 488, 593 S.E.2d 195, 198 (2004) (quoting Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002)).

> It is one of the fundamental rules of construction of statutes that the intention of the legislature is to be gathered from a view of the whole and every part of the statute taken and compared together, giving to every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were used in some other sense. If the intention of the legislature can be thus discovered, it is not permissible to add to or subtract from the words used in the statute.

Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771 (1918). This canon flows from the principle that "[w]e must . . . assume . . . the legislature chose, with care, the words it used when it enacted the relevant statute." Barr, 240 Va. at 295, 396 S.E.2d at 674.

Code § 53.1-120 mandates the sheriff to provide court*house* security. Nothing in the Appropriations Act modified that duty. We will not apply a maxim of statutory interpretation to nullify an express statutory duty. Further, absent a timely effort by appellant to challenge the validity of the order before he was held in contempt, the claim that appellant was relieved of a duty to comply based on superceding legislation is irrelevant.

## VI. IMPOSSIBILITY EVIDENCE

Appellant proffered certain evidence detailing his efforts to obtain additional funding which would then permit him to comply with the April 16, 2002 order. He also proffered that to staff the front entrance when court is not in session would require other tasks to go unperformed.

Appellant contends that this testimony is crucial to his defense of impossibility. "[T]he inability of an alleged contemner, without fault on his part, to render obedience to an order of court, is a good defense to a charge of contempt." Laing v. Commonwealth, 205 Va. 511, 514, 137 S.E.2d 896, 899 (1964).

The facts do not establish impossibility but rather a situation where appellant was confronted with several difficult options. He could comply with the court order, appeal the order, attempt to meet with the judges to resolve the conflict, adjust his job staffing requirements, or unilaterally violate the terms of the court order. He chose the latter. Appellant testified, "I felt the necessity to redirect the manpower for other allocations" because he had "been pulling resources from the jails daily to use at the court allowing the jails to get behind in workload." He further testified, "I made the conscious decision to bring that person away from court after court, concluded to man the jails."

> Legal impossibility occurs when a defendant's actions, even if fully carried out exactly as he intends, would not constitute a crime. Factual impossibility occurs when the actions intended by a defendant are proscribed by the criminal law, but a circumstance or fact unknown to the defendant prevents him from bringing about the intended result. Traditional analysis recognizes legal

impossibility as a valid defense but refuses to recognize factual
impossibility.

Parham v. Commonwealth, 2 Va. App. 633, 636, 347 S.E.2d 172, 173-74 (1986).

Far from impossibility, appellant made a conscious decision to fulfill one set of duties to

the neglect of the court order.  Further, absent a timely effort by appellant to challenge the

validity of the order before he was held in contempt, the claim that appellant was unable to

comply with the order due to impossibility based on a lack of funding is irrelevant.  We find the

trial court did not err in excluding evidence of "impossibility."

## VII.  VIOLATION OF THE APRIL 16, 2002 ORDER

Appellant maintains he did not violate the court's April 16, 2002 order because the letter

imposed no duty upon appellant to provide security.[8]  Appellant cites Michaels v.

Commonwealth, 32 Va. App. 601, 529 S.E.2d 822 (2000), to support his position.  In Michaels,

we reversed a contempt conviction because the order did not expressly require the sheriff to

transport the prisoner.

> A person is in "contempt" of a court order only if it is shown that
> he or she has violated its express terms.  "'The process for
> contempt lies for disobedience of what is decreed, not for what
> may be decreed.'"
>
> "[B]efore a person may be held in contempt for violating a court
> order, the order must be in definite terms as to the duties thereby
> imposed upon him and the command must be expressed rather than
> implied."

Id. at 609, 529 S.E.2d at 826 (citations omitted).

Essentially, appellant argues the order did not order that he maintain security of the

courthouse entrance.  He refers to language in the order such as "confirm our meetings" and "[I]t

was agreed you would take the following steps . . . ."  Appellant thus argues the tenor of the

_____

[8] In his reply brief, appellant argues the order was not an order at all, but simply a
confirmation of the agreement between appellant and the judges.  Since this issue was not raised
in the questions presented nor in appellant's brief, we will not address it.  See Rule 5A:20.

order is not an express directive to take certain actions, but an ambiguous communication as to the court's intent. We disagree. The order, after setting forth the agreement, *inter alia*, that appellant is to maintain security when the court is not in session, concludes, "and it is so ORDERED effective April 16, 2002." It is difficult to imagine how this language could be interpreted as ambiguous. Clearly, the order memorialized the agreement and ordered compliance. Further, appellant complied with that order until July 1, 2003.

Appellant argues he had no intent to impede the administration of justice. His action in removing the deputy from the courthouse entrance was due to his responsibilities of properly staffing the jail. He wanted to "allocate his resources the best way possible to manage all his duties in the justice system."

As we discussed in Section VI above, appellant, by his own admission, consciously decided to remove the deputy, in violation of the court order. He intentionally chose to fulfill one set of duties over the court order. Under appellant's argument, court orders are meaningless if the person under order can ignore the order based on his own priorities. This reasoning patently ignores the "well settled [rule] that a court in the protection and administration of justice is invested with power to punish for contempt in the disobedience of its orders and decrees." French v. Town of Clintwood, 203 Va. 562, 569, 125 S.E.2d 798, 802 (1962).

We, therefore, conclude appellant intentionally violated the April 16, 2002 order.

### VIII. REMOVAL OF ORDER AND SIGN

Appellant claims he did not violate the July 1, 2003 order which ordered the courthouse closed when security was not provided. He further argues since the order did not prohibit him from removing the order, he did not violate the order by removing it. This position is somewhat confusing, because appellant was not convicted of violating the July 1 order. He was convicted of removing the order and sign on July 2, 2003 in violation of Code § 18.2-456(1), i.e.,

"[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice."[9]

Appellant contends he did not intend to impede the administration of justice under Code § 18.2-456(1). His acts belie this assertion. The order of July 1, 2003 directed the clerk to post "a copy of this order on the front door of each courthouse." Clearly, posting was to advise the public of how they could access the courthouse when the courthouse was locked. By removing the sign and order, the public was denied access to the courthouse, including an inability to schedule cases with the court administrator. Appellant, by deliberately removing the sign and order, effectively negated the purpose of the order. The trial court found the removal "interrupt[ed] the orderly flow of the court's business."

Appellant excuses his behavior claiming it was necessary to maintain court security. Again, appellant substituted the court's directive with his own view of what was best for security. He unilaterally overruled the court's considered judgment. By preventing the public from learning of a means of alternate access to the courthouse, he intentionally precluded the public from transacting business with the court.

### IX. FAILURE TO RETURN ORDER

Appellant contends that Judge Baskervill had no right to enter his office and demand the return of the court order and sign, but he cites no authority for that statement.[10] The issues here are 1) whether Judge Baskervill had a right to demand the return of the sign and order removed from the courthouse door, and 2) if she had that right, did she, in fact, make that demand? By failing to cite any authority in support of this argument in his opening brief, appellant has

---

[9] Appellant does not contest that his act was "so near thereto as to obstruct or interrupt the administration of justice."

[10] Code § 53.1-127 restricts who may enter the interior of a local correctional facility.

- 24 -

violated the provisions of Rule 5A:20(c).  "[S]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).  Thus, we will not consider this issue on appeal.  It should also be noted that appellant was not convicted of refusing Judge Baskervill's entry into his office.

Appellant was convicted of disobedience of a lawful process or order by an officer of the court, under Code § 18.2-456(5).  He claims there was no lawful order since Judge Baskervill had no authority to demand the return of the sign and order.  Again, appellant cites no authority for this proposition.  See Rule 5A:20(c).  We will not address this issue on appeal.

Appellant also argues he complied with the judge's demand the next day when a deputy returned the order to Judge Baskervill.  Continuing, he claims there is no evidence that she used language requiring immediate return of the order.  Thus, appellant concludes since he returned the order the next day, he was in compliance with her demand.

A review of the record compels us to conclude Judge Baskervill made it extremely clear she demanded the return at that instant.  The judge asked for the papers a number of times.  She testified, "I didn't wish to talk to him about it.  I just merely wished to pick my papers up." Appellant refused, stating he wanted to read them.  Appellant read the order, and again the judge asked appellant for their return.  Appellant responded he would not give the order to her but he did give her the sign.  She left appellant's office.

The evidence clearly indicates appellant knew the judge demanded both the order and the sign then and there.  Appellant gave her the sign but refused to give her the order.

Appellant again cites Michaels, 32 Va. App. 601, 529 S.E.2d 822, arguing there was no express directive to return the order then and there.  In Michaels, the court continued a criminal trial so that the defendant could be evaluated at Central State Hospital.  Id. at 604, 529 S.E.2d at

824. While a copy of the order was sent to the sheriff, the order did not direct the sheriff to transport the prisoner to the hospital. Id. The sheriff was convicted of contempt for failure to transport. Id. at 607, 529 S.E.2d at 825. In that context, we held the command in the order must be expressed, not implied. Id. at 609-10, 529 S.E.2d at 826. However, in the instant case, under the totality of the circumstances, Judge Baskervill's demand for the immediate return of the order was expressed, rather than implied.

We find the trial court did not err in finding appellant in criminal contempt for failure to return the court order.

CONCLUSION

We find that the trial court did not err in: 1) finding Judge Baskervill had authority to enter the April 16, 2002 and July 1, 2003 orders; 2) failing to advise appellant whether the charges against him were civil or criminal; 3) finding appellant violated Code § 18.2-456(4) for leaving the courthouse without security; 4) finding that superseding legislation did not relieve appellant from providing a deputy at the courthouse entrance; 5) refusing to admit evidence of "impossibility" to comply with the court orders; 6) finding appellant violated the April 16, 2002 order; 7) finding appellant in contempt for removing the July 1, 2003 order from the courthouse door; and 8) finding Judge Baskervill had a right to enter appellant's office and demand return of the July 1, 2003 documents. We find the trial court's ruling that a sitting circuit court judge was competent to testify in those contempt proceedings was reversible error and that this error was not harmless. Accordingly, we reverse and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

Reversed and remanded.

- 26 -

Humphreys, J., with whom Felton, J., joins, dissenting.

I concur in the majority's analysis and holdings with respect to all issues presented in this appeal, save one. Specifically, I must respectfully disagree with the majority's conclusion that the plain language of Code § 19.2-271 barred Judge Baskervill from testifying at the contempt hearing. Although I entirely agree that the "victim of a crime" language in Code § 19.2-271 is inapplicable to this factual situation, I believe that the plain language of the statute does not encompass situations where the testifying judge had not considered, in her judicial capacity, the "matter" about which she was testifying. Thus, I would affirm the trial court's decision to admit Judge Baskervill's testimony.

Code § 19.2-271 provides, in pertinent part, that "[n]o judge shall be competent to testify . . . as to any matter *which came before him* in the course of his official duties." (Emphasis added). I agree with the majority's interpretation of "matter" as, generally, "[a] subject under consideration." Black's Law Dictionary 992 (7th ed. 1999). I believe, however, that the majority neglects to either interpret or apply another important phrase appearing in this statute: the language "came before." In my view, the majority's construction of the statute renders this phrase virtually meaningless, thereby giving short shrift to the "elementary rule of statutory construction that every word in the statute must be given its full effect . . . ." Home Beneficial Life Ins. Co. v. Unemployment Compensation Comm'n, 181 Va. 811, 819, 27 S.E.2d 159, 162 (1943).

Specifically, the majority states that "[i]t is the 'official duty' of the judge, not the location of the 'matter,' that controls." However, by using the language "came before," I believe the legislature manifested its clear intent that the judge must have considered the "matter" in his or her judicial capacity. Although the statute does not indicate that the judge must have formally presided over the matter during a trial or hearing, I believe the language "came before," when

- 27 -

narrowly construed,[11] indicates that the matter must have been presented to the judge in a manner involving some form of a deliberative process. Said differently, the matter must have "come before" the judge when she was in a position to actually pass judgment on that particular issue.

Here, although Judge Baskervill issued the April 16 and July 1 orders and, thus, should not have been permitted to testify as to the substance of those orders,[12] she did not issue the show cause order for contempt. Nor did she preside over any hearing regarding the contempt or issue any form of a judicial decision or opinion regarding the Sheriff's misconduct. Thus, although the April 16 and July 1 orders certainly "came before" her, the "matter" of whether Sheriff Epps *violated* those orders did not. Because it was the latter that was "under consideration" at the contempt hearing, and about which Judge Baskervill primarily sought to testify, I believe that Code § 19.2-271 did not render Judge Baskervill wholly incompetent to testify at the contempt hearing.

---

[11] The majority asserts that Judge Baskervill "sought [Epps] out precisely because of her official involvement in the entry of the orders and her belief that Sheriff Epps had violated them." The majority then concludes that "[i]t was in the course of these 'official duties' that Judge Baskervill observed the behavior about which she testified." Beyond disagreeing that it is reasonable to conclude that Judge Baskervill was fulfilling any "official duty" when she confronted Sheriff Epps, such an expansive interpretation of the plain language of this statute ignores another important principle of statutory construction. Statutes that "operate to limit the introduction of relevant evidence . . . must be strictly construed . . . ." Bennett v. Commonwealth, 236 Va. 448, 456, 374 S.E.2d 303, 309 (1988). Thus, because Code § 19.2-271 frustrates the fact-finding process by disqualifying individuals who would otherwise be competent to testify, the statute should be narrowly construed against the disqualification of the witness and in favor of the admissibility of evidence. See id.; see also Va. Elec. & Power Co. v. Bowers, 181 Va. 542, 546, 25 S.E.2d 361, 362 (1943) ("While this statute has its useful purposes it is in derogation of the common law, and, therefore, must be strictly construed.").

[12] However, because those orders were admissible regardless of whether Judge Baskervill testified at the hearing, I also believe that error was harmless. See Young v. Commonwealth, 194 Va. 780, 782, 75 S.E.2d 479, 481 (1953) (holding, in the context of a contempt proceeding, that "[f]ormal proof of the [underlying] order was not necessary as the court could take judicial notice of its own order").

Finally, as the majority notes, Judge Baskervill was engaged in the course of her official duties when she *observed* the contemptuous conduct. But that is not the judicial behavior at which the statute is directed. Rather, I believe the judge must have *considered* the contemptuous conduct while in the course of her judicial duties. Observing a defendant's misconduct is not equivalent to considering that conduct in a judicial capacity. Cf. Carter v. Commonwealth, 12 Va. App. 156, 158-59, 403 S.E.2d 360, 361-62 (1991) (construing identical language in Code § 19.2-271 pertaining to clerks of court and concluding that the statute "does not prevent a clerk from testifying how and whether he has performed a ministerial function").

Accordingly, I would hold that the trial court did not err in concluding that Judge Baskervill was competent to testify at the contempt hearing regarding the out-of-court conduct of the appellant because the "matter" about which she sought to testify never "came before [her]." Thus, I respectfully dissent from that portion of the majority's analysis and holding and would affirm the judgment of the trial court.

# *VIRGINIA:*

In the Court of Appeals of Virginia on **Tuesday** *the* **30th** *day of* **August, 2005**.

George M. Epps,
   Sheriff of City of Petersburg, Virginia,                            Appellant,

 against               Record No. 2303-04-2
                          Circuit Court Nos. CR03-586-00 through CR03-586-02

Commonwealth of Virginia,                                Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On August 9, 2005 came the appellant, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on July 26, 2005, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on July 26, 2005 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellant shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


GEORGE M. EPPS, SHERIFF OF
  CITY OF PETERSBURG

v.       Record No. 0591-04-2

COMMONWEALTH OF VIRGINIA                          OPINION BY
                                                 JUDGE ROBERT P. FRANK
GEORGE M. EPPS, SHERIFF OF                         JULY 26, 2005
  CITY OF PETERSBURG

v.       Record No. 2303-04-2

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Robert G. O'Hara, Judge Designate

John A. Gibney, Jr. (Thompson & McMullan, P.C., on briefs), for
appellant.

John H. McLees, Senior Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on briefs), for appellee.


In two separate appeals, George M. Epps, appellant, appeals the judgment of the trial court

finding him guilty of three counts of criminal contempt and one count of civil contempt. In this

consolidated appeal, appellant contends the trial court erred in: 1) finding Judge Baskervill had

authority to enter the April 16, 2002 and July 1, 2003 orders; 2) failing to advise appellant

whether the charges against him were civil or criminal; 3) finding Judge Baskervill competent to

testify as a sitting judge; 4) finding appellant violated Code § 18.2-456(4) for leaving the

courthouse unsecured; 5) finding that superseding legislation did not relieve appellant from the

duty of providing a deputy at the courthouse entrance; 6) refusing to admit evidence of

"impossibility" to comply with the court orders; 7) finding appellant violated the April 16, 2002 order; 8) finding appellant violated the July 1, 2003 order[1]; and 9) finding Judge Baskervill had a right to enter appellant's office and demand return of the July 1, 2003 letter and order. For the following reasons, we reverse and remand.

BACKGROUND

This case concerns security of the "old courthouse" building in Petersburg. The courthouse houses a courtroom on the second floor. The first floor includes the office of the Circuit Court Administrator, Gladys Kennedy, Circuit Judge D'Alton's office and the City's public law library. The court receives mail and presentence reports at the administrator's office. Lawyers also schedule all hearings at Ms. Kennedy's office. At the entrance to the old courthouse is a desk occupied by the deputy sheriff assigned to provide security for the courthouse building.

In April 2002, Circuit Court Judges D'Alton and Baskervill met with appellant, the Sheriff of the City of Petersburg, to discuss mutual problems. The judges memorialized the agreement reached at that meeting in a letter addressed to the sheriff, which the court entered as a court order on April 16, 2002, detailing certain duties appellant would perform in service to the court. Pertinent to the present case was a provision that "[t]he main court building, which has a public law library and conducts the court's business, shall have a deputy at the front entrance at all times during business hours of 8:00 a.m. and 4:30 p.m. Monday through Friday." Appellant complied with that order for over a year.

On June 6, 2003, appellant wrote a letter to the circuit court and district court clerks in Petersburg discussing difficulties resulting from a reduction of funds from the Compensation Board.

---

[1] Appellant argues he did not violate the July 1, 2003 order by removing the sign and order from the courthouse door. We note that the trial court did not convict appellant of violating that order, rather the court found appellant guilty of criminal contempt "for the July 2, 2003 removal of Court Order from the Courthouse door and subsequent refusal to return said order."

The letter stated, among other things, that "[w]ithout these funds from the fee bills I can no longer have deputies remain with the court building once court has concluded." The appellant did not send the circuit court judges a copy of this letter.

On June 9, 2003, appellant wrote a letter to Chief Judge D'Alton discussing his office's funding and staffing problems. In that letter, he did not tell the court, as he had the clerks, that he would no longer be able to maintain a deputy at the courthouse door in compliance with the April 16, 2002 order. Instead, he wrote that "[a]s of July 1, 2003, the reduction in the Sheriff's Office budget for FY04 will require some personnel changes which are directly related to maintaining the present state of readiness for our courts, the jails, document services and our transportation unit."

Effective July 1, 2003, appellant removed the deputy who guarded the old courthouse entrance when court was not in session. At trial, appellant explained he decided to remove the deputy from the front desk and return the deputy to the jail "to help to man the jails and fulfill the responsibilities of the things that were getting behind in the jail system." Appellant was aware of the April 16, 2002 order that required the presence of a deputy at the front desk. Essentially, appellant testified he could not comply with the April 16, 2002 order and still properly discharge his responsibilities in the jail. Appellant continued to properly staff the security needs of the court when it was in session.

On July 1, 2003, Judge Baskervill was informed that no deputy was posted at the old courthouse entrance, which left Ms. Kennedy alone in that building. Judge Baskervill directed the preparation and posting of a sign that indicated the courthouse was temporarily closed due to lack of security. The sign further gave a phone number to call in order to gain entrance.

Appellant removed that sign from the courthouse door on July 1, 2003, saying he did so because he determined the sign, itself, was a security risk.

Later that day, Judge Baskervill directed the preparation and posting of another virtually identical sign on the courthouse door. Also on July 1, 2003, she entered an order to be posted with the sign that provided:

> It appearing to the Court that the Sheriff of the City of Petersburg has ceased to provide security for the Courthouse when Court is not in session, it is ORDERED that in such times when security is not provided, the Courthouse shall be locked. Entrance shall be had only by calling 733-2423. The Clerk of this Court is directed to post a copy of this Order on the front door of each Courthouse.

Appellant then removed from the courthouse door both the second sign and the court order that accompanied it.

The next morning, July 2, 2003, Judge Baskervill went to the Sheriff's Office to retrieve the second sign and order. Appellant responded that the judge had no right to post papers on the courthouse door because he was in charge of courthouse security. The judge again asked for the return of those items. Appellant went to his office and pulled out the sign and order, still taped together. Judge Baskervill again asked for those items, and appellant responded, "no, I want to read them." After doing so, appellant told the judge that the order was inaccurate, and she had no right to post it. He eventually returned the sign, but not the order. When she again asked for the return of the order, he refused, and the judge left his office. One of appellant's deputies returned the order to the court the following day.

Judge D'Alton then issued a rule to show cause against appellant requiring appellant to show cause why he should not be held in contempt of court, pursuant to Code § 18.2-456 upon violation of the orders of April 16, 2002 and July 1, 2003. The rule was issued upon the sworn statement of Judge Baskervill, which was attached to the rule.

Prior to the beginning of the contempt trial, appellant inquired whether the proceeding was criminal or civil in nature. The court responded the proceeding was both civil and criminal.

At trial, the Commonwealth offered the testimony of Judge Baskervill, which the trial court admitted over appellant's objection.

At trial, appellant asked that he be allowed to put on evidence outlining staffing problems and his efforts to obtain additional funding from the City and the Compensation Board to obtain additional staffing to comply with the order. The trial court denied appellant's request, ruling that appellant's inability to comply with the court order is not a defense to contempt. The trial court did allow a proffer. Appellant testified in his own behalf.

The trial court found appellant guilty of one count of civil contempt for violating the April 16, 2002 order by not having security at the doors of the courthouse on July 1 and July 2, 2003. Further, the trial court found appellant guilty of three counts of criminal contempt violating various subsections of Code § 18.2-456. The first act was the removal of the sign and order on July 2, 2003 constituting misbehavior under Code § 18.2-456(1). The court, on this charge, found appellant, by removing the sign and order, denied the public access to the courthouse, thus defeating the purpose of the sign and order. The trial court thus concluded appellant "interrupt[ed] the administration of justice."

The trial court also found appellant guilty of criminal contempt on July 1, 2003 for, without justification, leaving the courthouse without security and without notice to the court. The trial court found this act to be "an act of misbehavior of an official nature or character of an officer of the court" in violation of Code § 18.2-456(4).

Finally, the trial court found appellant guilty of criminal contempt for the July 2, 2003 removal of the court order from the courthouse door and subsequent refusal to return the order to the court upon reasonable request in violation of Code § 18.2-456(5).

## I. VALIDITY OF ORDERS

Appellant contends Judge Baskervill had no authority to enter the April 16, 2002 order requiring posting of a deputy at the front desk and the July 1, 2003 order directing that the courthouse be closed when security was not provided. He maintains that since the April 16, 2002 order exceeds the authority of Code § 17.1-513, the trial court had no subject matter jurisdiction and the order is void. Therefore, contends appellant, he had no duty to obey the order. We disagree.

"It is, of course, well settled that disobedience of, or resistance to a void order, judgment, or decree is not contempt." Robertson v. Commonwealth, 181 Va. 520, 536, 25 S.E.2d 352, 358 (1943). This is so because "a void order, judgment, or decree is a nullity and may be attacked collaterally." Id.

Appellant cites Code § 17.1-513[2] as the sole source of jurisdiction for circuit courts. He contends circuit courts have no authority other than to preside over and rule on "proceedings."

---

[2] Code § 17.1-513 states:

> The circuit courts shall have jurisdiction of proceedings by quo warranto or information in the nature of quo warranto and to issue writs of mandamus, prohibition and certiorari to all inferior tribunals created or existing under the laws of this Commonwealth, and to issue writs of mandamus in all matters of proceedings arising from or pertaining to the action of the boards of supervisors or other governing bodies of the several counties for which such courts are respectively held or in other cases in which it may be necessary to prevent the failure of justice and in which mandamus may issue according to the principles of common law. They shall have appellate jurisdiction in all cases, civil and criminal, in which an appeal may, as provided by law, be taken from the judgment or proceedings of any inferior tribunal.
>
> They shall have original and general jurisdiction of all cases in chancery and civil cases at law, except cases at law to recover personal property or money not of greater value than $100,

Yet, appellant ignores other statutory and common law powers of the court to insure the orderly administration of justice.  See Bd. of Supervisors v. Bacon, 215 Va. 722, 724, 214 S.E.2d 137, 138 (1975) (holding when the courthouse building is occupied by court and municipal offices, the court has authority to control that portion of the building used for the court); see also Hutchins v. Carrillo, 27 Va. App. 595, 500 S.E.2d 277 (1998) (stating that district court judges have the authority to close court on the occurrence of inclement weather).

Courts have the inherent authority to ensure the security of their courtrooms.  See Payne v. Commonwealth, 233 Va. 460, 466, 357 S.E.2d 500, 504 (1987) ("The trial judge has overall supervision of courtroom security."); see also Bond v. Commonwealth, 32 Va. App. 610, 615, 529 S.E.2d 827, 829 (2000) (upholding the trial judge's decision to exercise responsibility for courtroom security by disallowing accused's twin brother, a prisoner, to sit among the audience in the courtroom).  Code § 53.1-120(A) mandates that the "sheriff shall ensure that the courthouse and courtrooms . . . are secured from violence and disturbance."  However, the chief

---

exclusive of interest, and except such cases as are assigned to some other tribunal; also in all cases for the recovery of fees in excess of $100; penalties or cases involving the right to levy and collect toll or taxes or the validity of an ordinance or bylaw of any corporation; and also, of all cases, civil or criminal, in which an appeal may be had to the Supreme Court.  They shall also have original jurisdiction of all indictments for felonies and of presentments, informations and indictments for misdemeanors.

They shall have appellate jurisdiction of all cases, civil and criminal, in which an appeal, writ of error or supersedeas may, as provided by law, be taken to or allowed by such courts, or the judges thereof, from or to the judgment or proceedings of any inferior tribunal.  They shall also have jurisdiction of all other matters, civil and criminal, made cognizable therein by law and when a motion to recover money is allowed in such tribunals, they may hear and determine the same, although it is to recover less than $100.

judge of the circuit "shall be responsible by agreement with the sheriff . . . for the designation of courtroom security deputies." Code § 53.1-120(B).

The April 16, 2002 order confirmed the agreement between the judges and the sheriff, and it ordered compliance with the agreement. Appellant never argued the order did not accurately reflect the agreement. In fact, appellant complied with the order until July 1, 2003.

Similarly, in its role to provide for the orderly administration of justice, the court ordered the courthouse closed when no security was provided. Indeed, it would be folly to claim the circuit court judge has the power to ensure courtroom security, but not courthouse security. If the judge is impotent to supervise who enters the courthouse, it is of no value for the judge to have the authority to ensure the security of the courtroom. It would surely be a hollow exercise. Although Code § 53.1-120 mandates the sheriff to provide courthouse security, the statute does not bar the court from ensuring the sheriff properly discharges that duty.

Clearly, the trial court has subject matter jurisdiction to address courtroom and courthouse security issues. Whether the trial court could order security when the court is not in session is not jurisdictional. The error, if any, would be as to whether the trial court had the authority to exercise its subject matter jurisdiction. See Nelson v. Warden, 262 Va. 276, 552 S.E.2d 73 (2001). If the court lacks authority to exercise its subject matter jurisdiction, the order would be erroneous or voidable, not void, see Robertson, 181 Va. at 536, 25 S.E.2d at 358, and appellant's remedy would be a direct appeal, not disobedience.

> Of course a party cannot be guilty of contempt of court for disobeying an order which the court had no authority of law to make, but if a court has jurisdiction of the parties and legal authority to render the order, then it must be obeyed even though it was erroneous or improvidently entered.

Id. at 537, 25 S.E.2d at 359 (citations omitted); see also Potts v. Commonwealth, 184 Va. 855, 861, 36 S.E.2d 529, 531 (1946) ("A dissatisfied litigant should challenge the correctness of an

- 8 -

adverse judgment or ruling by an appeal and not by disobedience of such order or by interfering with or obstructing the judicial processes.").  When one subject to a court order disobeys that order contending the order is void, he does so at his peril, as appellant did here.

Thus, the trial court had subject matter jurisdiction to order appellant to provide courthouse security.  The order was, at most, voidable rather than void, and appellant did not have the privilege to disobey the order, even if it was erroneous.

## II.  JUDGE BASKERVILL'S TESTIMONY

Appellant contends the trial court erred in allowing Judge Baskervill to testify at the contempt hearing, in violation of Code § 19.2-271.

Code § 19.2-271 states in part:  "No judge shall be competent to testify in any criminal or civil proceeding as to any matter which came before him in the course of his official duties." The only exception to the prohibition of Code § 19.2-271 is:

> Nothwithstanding any other provision of this section, any judge, clerk of any court, magistrate, or other person having the power to issue warrants, who is the victim of a crime, shall not be incompetent solely because of his office to testify in any criminal or civil proceeding arising out of the crime.

The Commonwealth concedes that the incidents to which the judge testified came before her in the course of her official duties.[3]  However, the Commonwealth contends Judge Baskervill

---

[3] While we are not bound by concessions of law by the parties, see Tuggle v. Commonwealth, 230 Va. 99, 111 n.5, 334 S.E.2d 838, 846 n.5 (1985) (affirming death sentence despite Attorney General's suggestion that the trial court's error required the case be remanded for resentencing), we will not, nor should we, address issues *sua sponte* that were never argued. See Johnson v. Commonwealth, 45 Va. App. 113, 116, 609 S.E.2d 58, 59 (2005) ("[S]uch an exercise of *sua sponte* judicial power would impermissibly place us in the role of advocate -- far outside the boundaries of our traditional adjudicative duties.").  Therefore, we will not address whether these incidents came before Judge Baskervill in the course of her official duties.

We are not suggesting an appellate court does not have the authority to raise issues *sua sponte*.  Indeed, in the appropriate circumstances, we should.  Our concern is in addressing issues *sua sponte* that have never been argued or briefed by counsel.  If an appellate court wants to raise an issue on its own, then the issue should be brought to counsel's attention and supplemental briefs should be filed.  See Lenz v. Warden of the Sussex I State Prison, 267 Va. 318, 342, 593

was the victim of the contempt and thus permitted to testify. Appellant responds that since contempt is an offense against the dignity of the court, then the court, not the judge, is the victim. We agree with appellant.

Section 4781 of the Code of Virginia of 1924, predecessor to Code § 19.2-271, made judicial officers incompetent to testify against a criminal defendant in a court of record with respect to any statements that the defendant made at his trial or preliminary examination before any such officer. That statute provided in relevant part:

> "No justice of the peace, police justice, civil and police justice, juvenile and domestic relations court judge or other trial justice shall be competent to testify against the accused in a court of record as to statements made by the accused on his trial by such justice or on his preliminary examination before such justice."

Baylor v. Commonwealth, 190 Va. 116, 121, 56 S.E.2d 77, 79 (1949).

In Baylor, the Supreme Court of Virginia stated that Code § 4781, as amended by the General Assembly in 1924, mandated that a trial justice be barred from testifying in circuit court to the fact that the accused had entered a guilty plea when his case was heard below. That particular statute was "designed and intended to protect an accused against the testimony of certain judicial officers before whom he has appeared as to admissions or confessions made by him." Id.

A comparison of the two statutes and these two cases makes clear that the provisions of Code § 19.2-271 are much broader than those of former Code § 4781. Section 4781 was applicable only to criminal prosecutions and then only in cases pending in a circuit court. On the other hand, Code § 19.2-271 applies to both civil and criminal proceedings in all courts and makes judicial officers incompetent to testify about matters that come before them in their

---

S.E.2d 292, 306 (2004) ("[W]e raised the issue, *sua sponte*, and asked the parties to address it."). To do otherwise is to author an opinion without input from counsel.

official capacity. It is applicable to all cases except those that are specifically enumerated, and

any party or witness may invoke its provisions. The evolution of this present statute indicates

the legislature's intent to make the prohibition all-inclusive, encompassing all situations where

judges may be called to testify "as to any matter which came before him in the course of his

official duties" except when they are victims of a crime.

The General Assembly has recognized the problem with Code § 19.2-271 with respect to

calling judicial officers as witnesses. In cases where a finding of criminal contempt in district

court is appealed to circuit court, the district court judge is often an indispensable witness to the

contemptuous event below and his or her testimony is essential to prosecution of the offense on

an appeal. Baugh v. Commonwealth, 14 Va. App. 368, 372-73, 417 S.E.2d 891, 894 (1992).

Code § 18.2-459[4] resolves this dilemma by requiring that the district court judge submit a

"certificate of the conviction and the particular circumstances of the offense." The circuit court

"may hear the case upon the certificate and any legal testimony adduced on either side." Code

§ 18.2-459. This statutory scheme accords proper deference to the district court judge and

ensures the preservation and availability of relevant evidence, in particular, the district judge's

---

[4] Code § 18.2-459 provides

> Any person sentenced to pay a fine, or to confinement, under
> § 18.2-458 [district judge's contempt authority], may appeal
> therefrom to the circuit court of the county or city in which the
> sentence was pronounced, upon entering into recognizance before
> the sentencing judge, with surety and in penalty deemed sufficient,
> to appear before such circuit court to answer for the offense. If
> such appeal be taken, a certificate of the conviction and the
> particular circumstances of the offense, together with the
> recognizance, shall forthwith be transmitted by the sentencing
> judge to the clerk of such circuit court, who shall immediately
> deliver the same to the judge thereof. Such judge may hear the
> case upon the certificate and any legal testimony adduced on either
> side, and make such order therein as may seem to him proper.

- 11 -

testimony. In effect, Code § 18.2-459 provides a narrow exception to Code § 19.2-271 by allowing a district court judge, by way of certificate, to testify as a witness in circuit court.

However, the General Assembly has not carved out a broader exception to Code § 19.2-271 that would permit a judicial officer who simply witnesses contemptuous behavior to testify in circuit court, nor did the legislature include circuit court judges in Code § 18.2-459. Had the legislature intended to create another exception to Code § 19.2-271 by allowing circuit court judges to testify through such a certificate, it would have so indicated.

"We must . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990). In sum, "'[c]ourts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied. There can be no departure from the words used where the intention is clear.'" Id. (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)).

Further, if the judge is the victim of contempt under Code § 19.2-271, the judge could then always testify in an appealed contempt conviction. There would be no need to set forth a procedure for the district court judge to transmit a "certificate of the conviction and the particular circumstances of the offense" to the circuit court to provide evidence of the contemptuous behavior. The language of that statute would be useless.

> The rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd. On the contrary, it is well established that every act of the legislature should be read so as to give reasonable effect to every word . . . .

Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984).

"'Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute.'" Carter v. Commonwealth, 2 Va. App. 392, 396, 345 S.E.2d 5, 7 (1986) (quoting 4A Michie's Jurisprudence Contempt § 2 (repl. vol. 1983)).  Any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt.  Potts, 184 Va. at 859, 36 S.E.2d at 530.

Black's Law Dictionary defines "victim" as a "person harmed by a crime, tort, or other wrong."  Black's Law Dictionary 1598 (8th ed. 2004).  Here, Judge Baskervill witnessed Sheriff Epps' behavior, yet she was not victimized by it.  She was not harmed, physically or otherwise, and she suffered no personal consequences.  Any damages resulting from Sheriff Epps' conduct were suffered by the court, not by Judge Baskervill individually.  Contempt offends the dignity of the court, not the dignity of the judge.  Although it was her individual acts in her judicial capacity that prompted appellant's actions, we disagree with the Commonwealth that Judge Baskervill was the victim of the offending behavior.

Because Judge Baskervill was not a victim of a crime committed by Sheriff Epps, we conclude that the trial court erred in allowing Judge Baskervill to testify.

Although the court erred in admitting Judge Baskervill's testimony, that error does not require reversal if we determine the error was harmless.[5]  Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*); see Ferguson v. Commonwealth,

---

[5] Appellant's testimony paralleled Judge Baskervill's.  "Generally, when a party unsuccessfully objects to evidence that he considers improper and then introduces on his own behalf evidence of the same character, he waives his earlier objection to the admission of that evidence."  Combs v. Norfolk & Western Ry., 256 Va. 490, 499, 507 S.E.2d 355, 360 (1998) (holding plaintiff waived objection where plaintiff objected to defendant's use of work bench as demonstrative exhibit because it differed from work bench plaintiff was using on day of injury and plaintiff subsequently "used the same exhibit[] in presenting demonstrative evidence on his own behalf").  Because this waiver issue was never argued, we will not address it *sua sponte*.  Johnson, 45 Va. App. at 116, 609 S.E.2d at 59.

240 Va. ix, 396 S.E.2d 675 (1990) (citing Code § 8.01-678 for the proposition that "harmless-error review is required in all cases").  The Commonwealth has offered no argument that the error was harmless, and we perceive no basis for such a holding.  See Land v. Commonwealth, 211 Va. 223, 226, 176 S.E.2d 586, 589 (1970) (in rape case in which court erroneously allowed Commonwealth to offer, in its case-in-chief, evidence of defendant's prior conviction for statutory rape, holding error could not be found harmless simply because defendant subsequently chose to take the stand because defendant's "decision to testify . . . may have been induced by the error" in admitting the testimony).  While appellant's testimony was in accord with Judge Baskervill's, we cannot say that it is harmless error for the court to have allowed Judge Baskervill's testimony in light of our inability to determine why appellant chose to testify.

## III.  CRIMINAL AND CIVIL CONTEMPT

Appellant contends the trial court erred by failing to advise him which charges were criminal and which charges were civil.  Appellant further maintains that his trial tactics may differ depending on whether the contempt charges are criminal or civil, i.e., deciding whether to testify or whether to call witnesses to address the quantum of punishment.[6]  It is uncontroverted the trial court indicated at the beginning of the hearing that the charges were both civil and criminal.  Further, by the end of the hearing, the trial court had articulated which charges were criminal and which were civil, so that appellant has this information at his disposal in the event of a retrial.  Appellant argues, and we agree, that civil and criminal contempt are quite different

---

[6]Appellant also argues that if the proceeding was criminal, the assistant attorney general present at the hearing could not participate in the proceeding as co-counsel, pursuant to Code § 2.2-511.  However, although an assistant attorney general was present, the record clearly indicates the assistant attorney general did not participate in the contempt proceedings.  Thus, this argument has no factual predicate.

- 14 -

offenses. However, those differences do not prevent the civil and criminal contempt charges from being tried simultaneously.[7]

"Contempt proceedings prosecuted to preserve the power and vindicate the dignity of the court are criminal and punitive; those prosecuted to preserve and enforce the rights of private parties are civil, remedial, and coercive." United Steelworkers v. Newport News Shipbuilding & Dry Dock Co., 220 Va. 547, 549, 260 S.E.2d 222, 224 (1979). There are significant differences in the two kinds of proceedings:

> In a criminal contempt proceeding, the defendant is presumed to be innocent, he must be proved guilty beyond a reasonable doubt, and he cannot be compelled to testify against himself. Moreover, a civil contempt proceeding is between the original parties to litigation and is instituted and tried as part of the main cause; a criminal contempt proceeding is between the public and the defendant, and is not a part of the original cause.

Id. at 550, 260 S.E.2d at 224 (citations omitted).

> "It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between . . . [civil and criminal contempt]." The punishment is criminal in nature if it is determined and unconditional. The punishment is civil if it is conditional, and a defendant can avoid a penalty by compliance with a court's order.
>
> "A proceeding for criminal contempt is a quasi-criminal proceeding between the public and the violator." In a criminal contempt proceeding, the trial court may always punish the violator for the purpose of upholding the authority and dignity of the court. In a contempt proceeding of this nature, the punishment imposed is a fine and/or imprisonment.
>
> "A proceeding for civil contempt partakes more of the nature of a remedial civil proceeding than it does of the nature of a criminal proceeding. Its main purpose is to procure the imposition of a punishment which will afford remedial relief to the parties injured."

Kessler v. Commonwealth, 18 Va. App. 14, 16, 441 S.E.2d 223, 224 (1994) (citations omitted).

---

[7] Appellant did not object at trial to the joinder of the civil and criminal contempt charges.

- 15 -

In criminal contempt, the accused is entitled to counsel and may elect to have a jury trial if the punishment exceeds six months. See Baugh, 14 Va. App. at 374, 417 S.E.2d at 895 ("We recognize, however, that the unbridled authority of courts to punish for criminal contempt in the absence of a jury is limited to 'petty contempts,' with a penalty not exceeding six months."). A court may not convert a civil contempt hearing into a criminal trial without notice to the accused. See Powell v. Ward, 15 Va. App. 553, 560, 425 S.E.2d 539, 544 (1993). However, an accused may be tried simultaneously for criminal and civil contempt under certain circumstances. Steinberg v. Steinberg, 21 Va. App. 42, 47, 461 S.E.2d 421, 423 (1995). "[A]lthough the criminal and civil contempt matters [are] tried together, prejudice [is] avoided so long as 'the defendants [are] . . . accorded all the rights and privileges owing to defendants in criminal contempt cases.'" Id. (quoting United States v. United Mine Workers, 330 U.S. 258, 298 (1947)).

Here, the record gives no indication that appellant was not afforded all the rights and privileges due him in a criminal proceeding, including application of the proper burden of proof. The contempt cases clearly were conducted as proceedings at law, styled "Commonwealth of Virginia v. George M. Epps." An assistant Commonwealth's attorney represented the Commonwealth. Appellant retained his own counsel. Appellant was not entitled to a jury because the Commonwealth proceeded under Code § 18.2-457, which allows punishment of no more than ten days in jail. Finally, appellant's Fifth Amendment rights were not violated because he was not forced to incriminate himself and voluntarily testified on his own behalf.

The record makes clear which contempt charges are criminal and which are civil, and on retrial, the charges may be joined "so long as '[appellant is] . . . accorded all the rights and privileges owing to defendants in criminal contempt cases.'" Steinberg, 21 Va. App. at 47, 461 S.E.2d at 423 (quoting United Mine Workers, 330 U.S. at 298).

- 16 -

## IV.  REMOVAL OF DEPUTY

Appellant argues he did not have adequate notice that failing to have a deputy at the door violated some duty to provide security.  He claims the show cause rule does not indicate this to be an issue.  We disagree.  The show cause clearly alleged appellant violated the order of April 16, 2002.  The affidavit attached to the rule set forth in detail that the deputy assigned to the front desk of the courthouse had been removed.  The affidavit also stated the judges received no notice of the removal despite the fact that appellant notified the district court clerks.

While appellant claims prejudice from no notice, a substantial amount of his defense was an explanation of why he removed the deputy after the court concluded business.  Further, appellant does not specify any prejudice that he may have suffered.  See Butler v. Commonwealth, 264 Va. 614, 570 S.E.2d 813 (2002).

Thus we find appellant had proper notice.

## V.  SUPERCEDING LEGISLATION

Appellant contends that subsequent to the April 16, 2002 order, the legislature enacted the 2003 Appropriations Act, which relieved his duty to comply with the order.  The Appropriations Act of 2003 provides that unless a judge states in writing "that a substantial security risk exists," the number of courtroom security deputies is strictly limited.  2003 Va. Acts ch. 1042, item 64, at 1787.  Appellant concludes that since the Act specifies the number of deputies assigned to court*rooms* and makes no such designation for court*house* security, the legislature did not intend to require security for the court*house* when court is not in session.  Appellant argues the Act effectively overruled the court order.  We disagree for two reasons.

First, although the 2003 Appropriations Act was not passed until after entry of the April 16, 2002 order, see 2003 Va. Acts ch. 1042, at 1733 (Act of May 1, 2003, amending Act of May 17, 2002, which provided biennial budget for 2002-2004), the courtroom security provision in

- 17 -

the 2003 Act that appellant contends modified his duties under the 2002 order was also a part of the 2000 and 2002 Appropriations Acts, see 2002 Va. Acts ch. 899, item 64, at 2265 (Act of May 17, 2002, for fiscal years from July 1, 2002, to June 30, 2004); 2000 Va. Acts ch. 1073, item 61, at 3260-61 (Act of May 19, 2000, for fiscal years from July 1, 2000, to June 30, 2002), a fact brought out by the Commonwealth at trial. Thus, identical language was contained in the Appropriations Act in effect when the April 16, 2002 order was entered, and the inclusion of that language in the 2003 Act effected no change. Appellant admitted at trial that he was aware "the language in that was in place already" and that he "just decided to act on it [in 2003]" because of further reductions in his department's budget.

Second, even if the courtroom security language in the 2003 Act had been new, its inclusion would not support the result appellant seeks. Appellant premises his argument on the maxim "*expressio unius est exclusio alterius*," which provides "when a statute mentions specific items, an implication arises that items not present were not intended to be included within the scope of the statute." Wise County Bd. of Supers. v. Wilson, 250 Va. 482, 485, 463 S.E.2d 650, 652 (1995). Clearly, the legislature, by express terms, intended to limit staffing requirements to courtroom security, not overall security of the courthouse. When interpreting statutory language that

> "is plain and unambiguous, we are bound by the plain meaning of that statutory language. Thus, when the General Assembly has used words that have a plain meaning, courts cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed."

Beck v. Shelton, 267 Va. 482, 488, 593 S.E.2d 195, 198 (2004) (quoting Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002)).

> It is one of the fundamental rules of construction of statutes that the intention of the legislature is to be gathered from a view of the whole and every part of the statute taken and compared together,

- 18 -

> giving to every word and every part of the statute, if possible, its
> due effect and meaning, and to the words used their ordinary and
> popular meaning, unless it plainly appears that they were used in
> some other sense.  If the intention of the legislature can be thus
> discovered, it is not permissible to add to or subtract from the
> words used in the statute.

Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771 (1918).  This canon flows from the principle that "[w]e must . . . assume . . . the legislature chose, with care, the words it used when it enacted the relevant statute."  Barr, 240 Va. at 295, 396 S.E.2d at 674.

Code § 53.1-120 mandates the sheriff to provide court*house* security.  Nothing in the Appropriations Act modified that duty.  We will not apply a maxim of statutory interpretation to nullify an express statutory duty.  Further, absent a timely effort by appellant to challenge the validity of the order before he was held in contempt, the claim that appellant was relieved of a duty to comply based on superceding legislation is irrelevant.

## VI.  IMPOSSIBILITY EVIDENCE

Appellant proffered certain evidence detailing his efforts to obtain additional funding which would then permit him to comply with the April 16, 2002 order.  He also proffered that to staff the front entrance when court is not in session would require other tasks to go unperformed.

Appellant contends that this testimony is crucial to his defense of impossibility.  "[T]he inability of an alleged contemner, without fault on his part, to render obedience to an order of court, is a good defense to a charge of contempt."  Laing v. Commonwealth, 205 Va. 511, 514, 137 S.E.2d 896, 899 (1964).

The facts do not reveal impossibility but rather a situation where appellant was confronted with several difficult options.  He could comply with the court order, appeal the order, attempt to meet with the judges to resolve the conflict, adjust his job staffing requirements, or unilaterally violate the terms of the court order.  He chose the latter.  Appellant testified, "I felt the necessity to redirect the manpower for other allocations" because he had "been pulling

- 19 -

resources from the jails daily to use at the court allowing the jails to get behind in workload." He

further testified, "I made the conscious decision to bring that person away from court after court,

concluded to man the jails."

> Legal impossibility occurs when a defendant's actions, even if
> fully carried out exactly as he intends, would not constitute a
> crime. Factual impossibility occurs when the actions intended by a
> defendant are proscribed by the criminal law, but a circumstance or
> fact unknown to the defendant prevents him from bringing about
> the intended result. Traditional analysis recognizes legal
> impossibility as a valid defense but refuses to recognize factual
> impossibility.

Parham v. Commonwealth, 2 Va. App. 633, 636, 347 S.E.2d 172, 173-74 (1986).

Far from impossibility, appellant made a conscious decision to fulfill one set of duties to

the neglect of the court order. Further, absent a timely effort by appellant to challenge the

validity of the order before he was held in contempt, the claim that appellant was unable to

comply with the order due to impossibility based on a lack of funding is irrelevant. We find the

trial court did not err in not admitting evidence of "impossibility."

## VII. VIOLATION OF THE APRIL 16, 2002 ORDER

Appellant maintains he did not violate the court's April 16, 2002 order because the letter

imposed no duty upon appellant to provide security.[8] Appellant cites Michaels v.

Commonwealth, 32 Va. App. 601, 529 S.E.2d 822 (2000), to support his position. In Michaels,

we reversed a contempt conviction because the order did not expressly require the sheriff to

transport the prisoner.

> "A person is in 'contempt' of a court order only if it is shown that
> he or she has violated its express terms. See Winn v. Winn, 218
> Va. 8, 10, 235 S.E.2d 307, 309 (1977). '"The process for contempt
> lies for disobedience of what is decreed, not for what may be

---

[8] In his reply brief, appellant argues the order was not an order at all, but simply a
confirmation of the agreement between appellant and the judges. Since this issue was not raised
in the questions presented nor in appellant's brief, we will not address it. See Rule 5A:20.

- 20 -

decreed.'" Id. (quoting Taliaferro v. Horde's Adm'r, 22 Va. (1 Rand.) 242, 247 (1822)).

'[B]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.' Id. (citation omitted)."

Id. at 609, 529 S.E.2d at 826.

Essentially, appellant argues the order did not order that he maintain security of the courthouse entrance. He refers to language in the order such as "confirm our meetings" and "[I]t was agreed you would take the following steps . . . ." Appellant thus argues the tenor of the order is not an express directive to take certain actions, but an ambiguous communication as to the court's intent. We disagree. The order, after setting forth the agreement, *inter alia*, that appellant is to maintain security when the court is not in session, concludes, "and it is so ORDERED effective April 16, 2002." It is difficult to imagine how this language could be interpreted as ambiguous. Clearly, the order memorialized the agreement and ordered compliance. Further, appellant complied with that order until July 1, 2003.

Appellant argues he had no intent to impede the administration of justice. His action in removing the deputy from the courthouse entrance was due to his responsibilities of properly staffing the jail. He wanted to "allocate his resources the best way possible to manage all his duties in the justice system."

As we discussed in Section VI above, appellant, by his own admission, consciously decided to remove the deputy, in violation of the court order. He intentionally chose to fulfill one set of duties over the court order. Under appellant's argument, court orders are meaningless if the person under order can ignore the order based on his own priorities. This result is patently absurd.

We, therefore, conclude appellant intentionally violated the April 16, 2002 order.

- 21 -

## VIII. REMOVAL OF ORDER AND SIGN

Appellant claims he did not violate the July 1, 2003 order which ordered the courthouse closed when security was not provided. He further argues since the order did not prohibit him from removing the order, he did not violate the order by removing it. This position is somewhat confusing, because appellant was not convicted of violating the July 1 order. He was convicted of removing the order and sign on July 2, 2003 in violation of Code § 18.2-456(1), i.e., "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice."[9]

Appellant contends he did not intend to impede the administration of justice under Code § 18.2-456(1). His acts belie this assertion. The order of July 1, 2003 directed the clerk to post "a copy of this order on the front door of each courthouse." Clearly, posting was to advise the public of how they could access the courthouse when the courthouse was locked. By removing the sign and order, the public was denied access to the courthouse, including an inability to schedule cases with the court administrator. Appellant, by removing the sign and order, effectively negated the purpose of the order. The trial court found the removal "interrupt[ed] the orderly flow of the court's business."

Appellant excuses his behavior claiming it was necessary to maintain court security. Again, appellant substituted the court's directive with his own view of what was best for security. He unilaterally overruled the court's considered judgment. By preventing the public of learning of a means of alternate access to the courthouse, he intentionally precluded the public from transacting business with the court.

---

[9] Appellant does not contest that his act was "so near thereto as to obstruct or interrupt the administration of justice."

IX.  FAILURE TO RETURN ORDER

Appellant contends that Judge Baskervill had no right to enter his office and demand the return of the court order and sign, but he cites no authority for that statement.[10]  The issues here are 1) whether Judge Baskervill had a right to demand the return of the sign and order removed from the courthouse door, and 2) if she had that right, did she, in fact, make that demand?  By failing to cite any authority in support of this argument in his opening brief, appellant has violated the provisions of Rule 5A:20(c).  "[S]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration."  Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).  Thus, we will not consider this issue on appeal.  It should also be noted that appellant was not convicted of refusing Judge Baskervill's entry into his office.

Appellant was convicted of disobedience of a lawful process or order by an officer of the court, under Code § 18.2-456(5).  He claims there was no lawful order since Judge Baskervill had no authority to demand the return of the sign and order.  Again, appellant cites no authority for this propositions.  See Rule 5A:20(c).  We will not address this issue on appeal.

Appellant also argues he complied with the judge's demand the next day when a deputy returned the order to Judge Baskervill.  Continuing, he claims there is no evidence that she used language requiring immediate return of the order.  Thus, appellant concludes since he returned the order the next day, he was in compliance with her demand.

A review of the record compels us to conclude Judge Baskervill made it extremely clear she demanded the return at that instant.  The judge asked for the papers a number of times.  She testified, "I didn't wish to talk to him about it.  I just merely wished to pick my papers up."  Appellant refused, stating he wanted to read them.  Appellant read the order, and again the judge

---

[10] Code § 53.1-127 restricts who may enter the interior of a local correctional facility.

asked appellant for their return. Appellant responded he would not give the order to her but he did give her the sign. She left appellant's office.

The evidence clearly indicates appellant knew the judge demanded both the order and the sign then and there. Appellant gave her the sign but refused to give her the order.

Appellant again cites Michaels, 32 Va. App. 601, 529 S.E.2d 822, arguing there was no express directive to return the order then and there. In Michaels, the court continued a criminal trial so that the defendant could be evaluated at Central State Hospital. Id. at 604, 529 S.E.2d at 824. While a copy of the order was sent to the sheriff, the order did not direct the sheriff to transport the prisoner to the hospital. Id. The sheriff was convicted of contempt for failure to transport. Id. at 607, 529 S.E.2d at 825. In that context, we held the command in the order must be expressed, not implied. Id. at 609-10, 529 S.E.2d at 826. However, in the instant case, under the totality of the circumstances, Judge Baskervill's demand for the immediate return of the order was expressed, rather than implied.

We find the trial court did not err in finding appellant in criminal contempt for failure to return the court order.

### CONCLUSION

We find that the trial court did not err in: 1) finding Judge Baskervill had authority to enter the April 16, 2002 and July 1, 2003 orders; 2) failing to advise appellant whether the charges against him were civil or criminal; 3) finding appellant violated Code § 18.2-456(4) for leaving the courthouse without security; 4) finding that superseding legislation did not relieve appellant from providing a deputy at the courthouse entrance; 5) refusing to admit evidence of "impossibility" to comply with the court orders; 6) finding appellant violated the April 16, 2002 order; 7) finding appellant in contempt for removing the July 1, 2003 order from the courthouse door; and 8) finding Judge Baskervill had a right to enter appellant's office and demand return of

the July 1, 2003 documents.  We find the trial court's ruling that a sitting circuit court judge was competent to testify in those contempt proceedings was reversible error and that this error was not harmless.  Accordingly, we reverse and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

Reversed and remanded.

Elder, J., concurring, in part, and concurring in the result.

I concur in the decision to reverse and remand the civil and criminal contempt rulings. I also concur with the reasoning for doing so as explained in Judge Frank's opinion, as well as all other reasoning contained in that opinion, with the exception of his footnotes 3 and 5. Unlike Judge Frank in his footnote 5, I believe we must consider whether Sheriff Epps's offering testimony that paralleled Judge Baskervill's constituted a waiver of his prior objection to the admission of that testimony, and I would conclude that no waiver occurred.[11] Further, unlike Judge Frank in his footnote 3, and for the reasons set out in Part A of Judge Humphreys's dissenting opinion, I agree that we should address on the merits the question whether Judge Baskervill's testimony concerned a "matter which came before [her] in the course of [her] official duties." However, unlike Judge Humphreys, I would conclude all of the relevant matter about which Judge Baskervill testified did, in fact, "[come] before [Judge Baskervill] in the course of [her] official duties" as contemplated by Code § 19.2-271. Because I agree with Judge

---

[11] "An objection to previously introduced testimony is not waived by 'the mere cross-examination of a witness or the introduction of rebuttal evidence, either or both.'" McGill v. Commonwealth, 10 Va. App. 237, 244, 391 S.E.2d 597, 601 (1990) (quoting Snead v. Commonwealth, 138 Va. 787, 801, 121 S.E. 82, 86 (1924). No waiver occurs where the accused "only attempt[s] to rebut the Commonwealth's evidence by describing his version of [what] occurred." Id. Here, appellant's objection pertained merely to the *method* by which the Commonwealth offered the evidence--via the testimony of a sitting circuit court judge--not to the relevance or content of the testimony. Thus, no waiver occurred.

The Commonwealth did not raise a waiver argument at trial or on appeal, but it need not have done so in order for us to consider such an argument on appeal. At trial, when the trial court overruled appellant's objection to the admission of Judge Baskervill's testimony, the Commonwealth presented its case. When appellant chose to testify, the Commonwealth was under no duty to inform anyone that his taking the stand might amount to a waiver of his objection to Judge Baskervill's testimony. Further, when a legal issue is properly before us on appeal, as the admissibility of Judge Baskervill's testimony is, we apply the applicable law to resolve the issue, regardless of whether that law was fully presented to the trial court below or to us on appeal. Cf. Lash v. County of Henrico, 14 Va. App. 926, 929, 421 S.E.2d 851, 853 (1992) (en banc) (holding that, as long as litigant preserves issue in trial court, Rule 5A:18 does not prevent appellate court "from relying on . . . authority that was not presented to the trial court or referred to in [the parties'] briefs" (emphasis added)).

Frank's conclusion that Judge Baskervill was not a victim of crime, I join in Judge Frank's

conclusion that the trial court's ruling allowing Judge Baskervill to testify was error.

Code § 19.2-271 provides as follows:

> No judge shall be competent to testify in any criminal or civil proceeding as to any matter which came before him in the course of his official duties.

> . . . Notwithstanding any other provision of this section, any judge . . . who is the victim of a crime[] shall not be incompetent solely because of his office to testify in any criminal or civil proceeding arising out of the crime.

As the majority opinion notes in its discussion of the crime victim exception, the predecessor to

Code § 19.2-271 was much narrower, rendering a judge incompetent to testify only as "'against

the accused in a court of record as to statements made by the accused on his trial by such justice

or on his preliminary examination before such justice.'" Baylor v. Commonwealth, 190 Va. 116,

121, 56 S.E.2d 77, 79 (1949) (quoting former Code § 4781 as amended by 1924 Va. Acts ch.

411). As the majority opinion notes further, Code § 19.2-271 is "much broader" and

> is applicable to all cases except those that are specifically enumerated, and any party or witness may invoke its provisions. The evolution of this present statute indicates the legislature's intent to make the prohibition all-inclusive, encompassing all situations where judges may be called to testify "as to any matter which came before him in the course of his official duties" except where they are victims of a crime.

Judge Humphreys acknowledges that the orders of April 16, 2002 and July 1, 2003

"certainly 'came before' [Judge Baskervill] in the course of her official duties" and, thus, that

Code § 19.2-271 rendered her incompetent "to testify about the foundation and contents of those

orders." However, he concludes that because Judge Baskervill did not issue the show cause

order for contempt for violating those orders and did not preside over the contempt proceedings,

the matter of whether Sheriff Epps violated the orders did not "[come] before [her] in the course

of her official duties."

To conclude that the orders themselves and the circumstances surrounding their entry *were* "matter[s]" that "came before [Judge Baskervill] in the course of [her] official duties" while simultaneously concluding that Judge Baskervill's encounters with Sheriff Epps in which he violated or admitted violating those orders *were not* such matters seems an artificial distinction that the language of the statute neither requires nor supports. Judge Baskervill was not a disinterested witness who merely happened to observe Sheriff Epps's relevant behavior. Rather, she sought him out precisely because of her *official* involvement in the entry of the orders and her belief that Sheriff Epps had violated them. It was in the course of these "official duties" that Judge Baskervill observed the behavior about which she testified.

Of course, the General Assembly is free to fashion a statute that narrows the scope of the "official" matters about which a judge may not testify, such as by prohibiting a judge from testifying about testimony or argument made during the course of an actual judicial proceeding in the courtroom or in chambers while allowing testimony about events that occur in the course of a judge's administrative duties not involving a party or witness to any particular litigation. See also Baylor, 190 Va. at 121, 56 S.E.2d at 79 (discussing scope of former Code § 4781, more narrowly drawn predecessor of present Code § 19.2-271). However, unless and until it does so, I believe the only reasonable conclusion is that Code § 19.2-271 applies to any "matter" that "[comes] before" a judge acting in his or her "official" capacity, regardless of whether that matter occurs in the courtroom, chambers, the sheriff's office, or any other location and regardless of whether the matter results in subsequent judicial proceedings over which that judge presides or entry of an order by that judge.

Judge Humphreys's arguments concerning the holdings in Baugh v. Commonwealth, 14 Va. App. 368, 417 S.E.2d 891 (1992), and Crawford v. Washington, 541 U.S. 36 (2004), do not support a different result. To the extent Crawford may be interpreted to call into question the

- 28 -

admissibility of a certificate from a district court judge in a circuit court appeal of a contempt proceeding, see Code § 18.2-459, under the Confrontation Clause, this is a problem we need not confront in this case because no certificate was used and the majority agrees that a certificate could not properly have been used on these facts. Further, because Crawford effected a change in Confrontation Clause precedent and was decided after the General Assembly's enactment and amendment of Code §§ 18.2-459 and 19.2-271, I do not believe its holding is relevant to an interpretation of legislative intent. The Confrontation Clause problem, if one exists in the context of these statutes, must await legislative resolution.

For these reasons, I concur in the reasoning in Part A of Judge Humphreys's opinion, and I concur in the reasoning of Judge Frank's opinion with the exception of footnotes 3 and 5. Thus, I also concur in the decision to reverse and remand the civil and criminal contempt rulings.

Humphreys, J., concurring, in part, and dissenting, in part.

I concur in the majority's analysis and holdings with respect to all issues presented with the exception of that portion of the majority's analysis and holding regarding the admissibility of Judge Baskervill's testimony. Specifically, I disagree with the majority's conclusion that the plain language of Code § 19.2-271 barred Judge Baskervill from testifying at the contempt hearing. Initially, I agree with the majority that the "victim of a crime" language in Code § 19.2-271 does not apply under the circumstances of this case. I also agree that Code § 18.2-459, which authorizes a district court judge to prepare and submit to the circuit court a certificate detailing "the particular circumstances of the offense," does not apply because this case did not involve an appeal from the district court to the circuit court. However, because I believe that the plain language of Code § 19.2-271 does not encompass situations where the testifying judge had not considered, in her judicial capacity, the "matter" about which she was testifying, I would affirm the trial court's decision to admit Judge Baskervill's testimony.

A.

Initially, I agree that, in their appellate briefs, neither party addressed the threshold issue of whether Code § 19.2-271 applies under the circumstances of this case, focusing instead on the "victim" exception contained in the statute. However, I note that the trial court apparently concluded that the plain language of the statute did not apply when it admitted the judge's testimony, reasoning that the incidents about which the judge proposed to testify occurred "outside of a judicial proceeding." Thus, I believe that it is entirely appropriate to address the plain meaning of Code § 19.2-271 rather than merely assuming, as does the majority, that the statute applies. See Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 635, 593 S.E.2d 568, 571 (2004) (noting that "a pure question of statutory interpretation" is "a matter within the core competency of the judiciary"); see also One 1968 Buick v. State, 638 N.E.2d 1313, 1316 (Ind.

- 30 -

Ct. App. 1994) ("A preliminary issue which we raise *sua sponte* is one of statutory interpretation."); Bartus v. Dep't of Health & Social Servs., 501 N.W.2d 419, 423 (Wisc. 1993) (holding that the Wisconsin Court of Appeals "had the authority to raise the question of statutory interpretation *sua sponte*," and declining "to adopt a *per se* rule requiring courts to seek additional briefing" because the court "consider[ed] such a rule both unnecessary and unduly burdensome to the courts").

I also note that the language quoted by the majority, specifically, that "'such an exercise of *sua sponte* judicial power would impermissibly place us in the role of advocate—far outside the boundaries of our traditional adjudicative duties,'" was derived in an entirely different context. In Johnson v. Commonwealth, 45 Va. App. 113, 116, 609 S.E.2d 58, 59 (2005), this Court declined to raise, *sua sponte*, the validity of an alternative holding of the trial court, specifically, the applicability of the inevitable discovery doctrine under the circumstances of that case. I do not believe that, in this dissent, I am addressing an alternative, unappealed ruling from the trial court. Rather, I address the *only* ruling from the trial court pertaining to an issue—the applicability of a statute—that has been properly presented to this Court on appeal.

Regardless, I believe that, where a party has challenged the applicability of a particular statute on appeal, appellate courts always have the authority to raise and construe the plain meaning of that statute.[12] Indeed, as noted by the Virginia Supreme Court, an appellate court

---

[12] I further note that addressing the plain meaning of a statute *sua sponte* does not give rise to the same concerns as the well established rule against mounting, *sua sponte*, a constitutional challenge to a statute. The rule against raising the constitutionality of a statute *sua sponte* is grounded in the "deference due to acts of the General Assembly." Benderson Dev. Co. v. Sciortino, 236 Va. 136, 148, 372 S.E.2d 751, 757 (1988) ("Because of the deference due to acts of the General Assembly, we do not seek out constitutional challenges to statutes and decide them s*ua sponte*. We will consider such challenges only when they have been properly raised and preserved in the court below, appropriately assigned as error, and briefed and argued on appeal." (citation omitted)). Addressing the plain meaning of a statute, however, merely interprets—not invalidates—the language chosen by the General Assembly, and the deference accorded to acts of the General Assembly thereby remains intact.

"cannot be forced to accept a flawed construction of a statute . . . simply because of an oversight or tactical decision by one or both of the parties." Elliott v. Commonwealth, 267 Va. 464, 472, 593 S.E.2d 263, 268 (2004) (raising, *sua sponte*, the issue of whether the unconstitutional portions of a statute could be severed so as to prevent the entire statute from being declared invalid); cf. Mack v. City of Detroit, 649 N.W.2d 47, 60 (Mich. 2002) ("The jurisprudence of [this state] cannot be, and is not, dependent upon whether individual parties accurately identify and elucidate controlling legal questions.").

Moreover, avoiding the plain meaning issue merely because it has not been expressly raised in the parties' appellate briefs gives rise to an unacceptable risk of rendering what amounts to an advisory opinion: a decision construing language contained in a statute that does not apply in the first place. And, as recently noted by the Virginia Supreme Court, an appellate court may "consider, *sua sponte*, whether a decision would be an advisory opinion because the Court does not have the power to render a judgment that is only advisory." Martin v. Ziherl, 269 Va. 35, 40, 607 S.E.2d 367, 369 (2005); see also Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) ("'[C]ourts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative.'" (quoting City of Fairfax v. Shanklin, 205 Va. 227, 229-30, 135 S.E.2d 773, 775-76 (1964)) (omission in original)); Baldwin v. Commonwealth, 43 Va. App. 415, 421, 598 S.E.2d 754, 757 (2004) (same).

For these reasons, I do not share the majority's reluctance to address the initial applicability of Code § 19.2-271 despite the parties' failure to expressly raise the issue on appeal, especially in light of the trial court's apparent ruling that the statute is, according to its plain language, inapplicable under the circumstances of this case.

The construction and applicability of Code § 19.2-271 is a pure question of law. Accordingly, this Court should review the trial court's judgment *de novo*. See Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998) ("[A]lthough the trial court's findings of historical fact are binding on appeal unless plainly wrong, we review the trial court's statutory interpretations and legal conclusions *de novo*.").

I begin, as always, with the plain language of the statute, for "'[w]here the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Barr v. Town & Country Properties, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)). "We must . . . assume that the legislature chose, with care, the words it used when it enacted the . . . statute, and we are bound by those words as we interpret the statute." Id.

Also, when interpreting the plain language of a statute, this Court must be cognizant of the general principle that a statute "operat[ing] to limit the introduction of relevant evidence . . . must be strictly construed . . . ." Bennett v. Commonwealth, 236 Va. 448, 456, 374 S.E.2d 303, 309 (1988). This rule is applicable regardless of whether the language chosen by the General Assembly harbors any ambiguity. See Va. Soc'y for Human Life, Inc. v. Caldwell, 256 Va. 151, 157 n.3, 500 S.E.2d 814, 817 n.3 (1998) ("[A] finding of ambiguity is not a prerequisite for applying a narrowing construction [of a statute]."). Thus, because Code § 19.2-271 disqualifies individuals who would otherwise be competent to testify, the statute should be narrowly construed against the disqualification of the witness and in favor of the admissibility of evidence. See Bennett, 236 Va. at 456, 374 S.E.2d at 309; see also Va. Elec. & Power Co. v. Bowers, 181

Va. 542, 546, 25 S.E.2d 361, 362 (1943) ("While this statute has its useful purposes it is in derogation of the common law, and, therefore, must be strictly construed.").

Code § 19.2-271 provides, in pertinent part, as follows:

> No judge shall be competent to testify in any criminal or civil proceeding as to any matter which came before him in the course of his official duties.
>
> *       *       *       *       *       *       *
>
> . . . Notwithstanding any other provision of this section, any judge . . . who is the victim of a crime, shall not be incompetent solely because of his office to testify in any criminal or civil proceeding arising out of the crime.

According to the plain language of Code § 19.2-271, a judge is therefore only incompetent to testify about a "matter" that "came before him in the course of his official duties." A "matter" is generally defined as "[a] subject under consideration, esp. involving a dispute or litigation," or "[s]omething that is to be tried or proved; an allegation forming the basis of a claim or defense." Black's Law Dictionary 992 (7th ed. 1999). The question at issue is, therefore, whether the "subject under consideration" at the contempt hearing ever "came before" Judge Baskervill "in the course of [her] official duties." I believe, as did the trial court, that it did not.

Initially, I agree with the majority that the statute rendered Judge Baskervill incompetent to testify as to the contents of the April 16 and July 1 orders, for those "matters" certainly "came before" her in the course of her official duties. To the extent the trial court permitted her to testify about the foundation and contents of those orders, I agree that the court erred. However, because those orders were admissible regardless of whether Judge Baskervill testified at the hearing, I also believe that error was harmless. See Young v. Commonwealth, 194 Va. 780, 782, 75 S.E.2d 479, 481 (1953) (holding, in the context of a contempt proceeding, that "[f]ormal proof of the [underlying] order was not necessary as the court could take judicial notice of its own order").

Although Judge Baskervill issued the April 16 and July 1 orders and, thus, should not have been permitted to testify as to the substance of those orders, she did not issue the show cause order for contempt. Nor did she preside over a contempt hearing or otherwise consider the issue of the Sheriff's misconduct while "in the course of [her] official duties." Thus, although the April 16 and July 1 orders certainly "came before [her] in the course of [her] official duties," the "matter" of whether Sheriff Epps *violated* those orders did not.[13] Because it was the latter that was "under consideration" at the contempt hearing, and about which Judge Baskervill primarily sought to testify, I believe that Code § 19.2-271 did not render Judge Baskervill wholly incompetent to testify at the contempt hearing.[14]

Also, as noted in Baugh v. Commonwealth, 14 Va. App. 368, 417 S.E.2d 891 (1992), judges in contempt cases are often "indispensable witness[es]," and their testimony is "essential to prosecution of an offense . . . ." Id. at 371, 417 S.E.2d 894. If, as the majority holds, Code § 19.2-271 prohibits a judge from testifying in a contempt hearing, the question remains as to how that "essential" testimony may be presented to the trial court. Although this Court held in Baugh that admitting a certificate or similar affidavit in lieu of a judge's oral testimony does not violate a defendant's confrontation rights, that holding has been called into question by the rule recently announced in Crawford v. Washington, 541 U.S. 36 (2004). Specifically, in Crawford,

_____

[13] As noted by Judge Elder, Judge Baskervill was arguably engaged in the course of her official duties when she *observed* the contemptuous conduct. But that is not the judicial behavior at which the statute is directed. Rather, the judge must have *considered* the contemptuous conduct while in the course of her judicial duties. Observing a defendant's misconduct is not equivalent to considering that conduct in a judicial capacity.

[14] I agree that the amendments to the statute were intended to broaden its scope and applicability. However, by retaining the language "came before him," the General Assembly retained the requirement that the judge must have actually considered the matter in his or her judicial capacity. Although the language of the statute does not indicate that the judge must have presided over the matter during a trial, hearing, or other formal judicial proceeding, I believe the language "came before," when narrowly construed, indicates that the matter must have been presented to the judge in a manner involving some form of a deliberative process.

- 35 -

the United States Supreme Court held that admitting "testimonial" hearsay evidence violates the Sixth Amendment. See id. at 50-51. A certificate or affidavit prepared by a judge, and admitted during a show cause hearing to prove a charge of contempt, is "testimonial" evidence that seems to fall squarely within the Crawford rule. Thus, the continued validity of the holding in Baugh— with respect to alternative means of presenting the testimony of a judicial witness—is dubious, at best. Indeed, the trial court here recognized the potential constitutional issue, noting that admitting the affidavit prepared by Judge Baskervill "might well defy the [defendant's] right to confrontation."

Thus, the majority's holding and rationale leads to the inescapable conclusion that, if a judge witnesses a defendant's contemptuous conduct and thereafter either recuses herself or is unable to preside over the contempt hearing, there may be no conceivable manner in which the defendant can be convicted of contempt. I cannot believe that the General Assembly intended this absurd result. See Cook v. Commonwealth, 268 Va. 111, 115, 597 S.E.2d 84, 87 (2004) ("[O]ur case law uses the phrase 'absurd result' to describe situations in which the law would be internally inconsistent *or otherwise incapable of operation*." (emphasis added)).

For these reasons, I would hold that the trial court did not err in concluding that Judge Baskervill was competent to testify at the contempt hearing regarding the out-of-court conduct of the appellant because the "matter" about which she sought to testify never "came before [her] in the course of [her] official duties." Thus, I respectfully dissent from that portion of the majority's analysis and holding and would affirm the judgment of the trial court.